**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CHRISTOPHER SOGHOIAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-1080 (ABJ)** |
| | ) | |
| **v.** | ) | **ECF** |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant, United States Department of Justice, by and through undersigned counsel, respectfully moves the Court to enter summary judgment in its favor in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, because there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.  In support of this motion, Defendant respectfully refers the Court to the accompanying memorandum of points and authorities and statement of materials facts as to which there is no genuine issue.  A proposed Order consistent with this motion is attached hereto.

Plaintiff, who is proceeding pro se, should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), LCvR 7(h), and Fed. R. Civ. P. 56(c) and 56(e), which provide, in pertinent part, as follows:

**(c)**     **Procedures**

> **(1)**     **Supporting Factual Positions.**   A person asserting that a fact cannot be or is genuinely disputed support the assertion by:
>
> > **(A)**     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers; or
> >
> > **(B)**     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> * * * * *
>
> **(4)**     **Affidavits or Declarations.**   An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declaration is competent to testify to the matters stated.

**(e)**     **Failing to Properly Support or Address a Fact.**   If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> **(1)**     give an opportunity to properly support or address the fact;
>
> **(2)**     consider the fact undisputed for purpose of the motion;
>
> **(3)**     grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> **(4)**     issue any other appropriate order.

Fed. R. Civ. P. 56(c) and (e).

Respectfully submitted,

RONALD C. MACHEN JR, DC Bar # 447889
United States Attorney for the District of Columbia

RUDOLPH CONTRERAS, DC. Bar # 434122
Chief, Civil Division

By:      /s/
       JOHN G. INTERRANTE
       PA Bar # 61373
       Assistant United States Attorney
       Civil Division
       555 4th Street, NW, Room E-4808
       Washington, DC 20530
       Tel:    202.514.7220
       Fax:    202.514.8780
       Email:  John.Interrante@usdoj.gov

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CHRISTOPHER SOGHOIAN,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-1080 (ABJ)** |
|  | ) | |
| **v.** | ) | **ECF** |
|  | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
|  | ) | |
| **Defendant.** | ) | |
|  | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and pertains to the request of Plaintiff, Christopher Soghoian, who is proceeding pro se, for records from the United States Department of Justice ("DOJ" or "Department"), Criminal Division ("DOJ CRM"). As set forth in the accompanying declarations and Vaughn indices, DOJ CRM has conducted a reasonable search of agency records, has disclosed all non-exempt responsive records, and has not improperly withheld any responsive records from Plaintiff. Thus, there is no genuine issue as to any material fact, and Defendant is entitled to judgment as a matter of law.

**STATEMENT OF FACTS**

Defendant hereby incorporates the Statement of Material Facts Not In Genuine Dispute ("SFNGD"), and the Declarations and Vaughn indices prepared by John Cunningham ("Cunningham declaration) on behalf of DOJ CRM and John Boseker ("Boseker declaration") for records referred to the Executive Office for United States Attorneys ("EOUSA") and exhibits referenced therein, filed contemporaneously with this Memorandum. Mr. Cunningham is an attorney in the Freedom of Information Act/Privacy Act ("FOIA/PA") Unit of the United States Department of Justice. Mr.

Cunningham's duties include providing litigation support and assistance to Assistant United States Attorneys ("AUSA") and DOJ Civil Division Trial Attorneys who represent the Department in lawsuits filed in Federal court under the FOIA and/or Privacy Act arising from requests for DOJ CRM records.  Cunningham Decl., ¶ 1.   Mr. Boseker is an Attorney Advisor in EOUSA and is specifically assigned to the component of EOUSA designated to administer FOIA and the Privacy Act.  Bosker Decl., ¶ 1.

## LEGAL STANDARDS

In a FOIA action, a district court has jurisdiction only when an agency has improperly withheld agency records.  5 U.S.C. § 552(a)(4)(B).  FOIA, however, does not allow the public to have unfettered access to government files.  McCutchen v. United States Dep't of Health and Human Services, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  Department of Defense v. FLRA, 510 U.S. 487, 494 (1994).  To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  Public Citizen Health Research Group v. FDA, 185 F.3d 898, 904 (D.C. Cir. 1999).

"[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'"  Trueblood v. United States Dep't of Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996) (quoting Crooker v. United States State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980)); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982).  Accordingly, summary judgment is appropriate in a FOIA action, such as this one, where the pleadings, together with the declaration, demonstrate that there are no material facts in dispute and the requested information has been produced or is

exempted from disclosure, and the agency, as the moving party, is entitled to judgment as a matter

of law. Fed. R Civ. P. 56(a); <u>Students Against Genocide v. Department of State</u>, 257 F.3d 828, 833

(D.C. Cir. 2001); <u>Weisberg v. United States Dep't of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980);

<u>Fischer v. U.S. Dep't of Justice</u>, 596 F.Supp.2d 34, 42 (D.D.C. 2009) ("summary judgment may be

granted to the government if 'the agency proves that it has fully discharged its obligations under the

FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light

most favorable to the FOIA requester'") (citation omitted).

## ARGUMENT

DOJ CRM has conducted a reasonable search of the two components likely to have

responsive records – the Office of Enforcement Operations ("OEO") and the Computer Crime and

Intellectual Property Section ("CCIPS") – has disclosed all non-exempt responsive records, and has

not improperly withheld any responsive records from Plaintiff. Thus, there is no genuine issue as

to any material fact, and Defendant is entitled to judgment as a matter of law.

## I.      DOJ CRM CONDUCTED AN ADEQUATE SEARCH OF ITS RECORDS SYSTEMS.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive

records. <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Weisberg v. United</u>

<u>States Dep't of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). An agency is not required to search

every record system, but need only search those systems in which it believes responsive records are

likely to be located. <u>Oglesby</u>, 920 F.2d at 68. "An agency fulfills its obligations under FOIA if it

can demonstrate beyond material doubt that its search was reasonably calculated to uncover all

relevant documents." <u>Fischer</u>, 596 F.Supp.2d at 42 (quoting <u>Valencia-Lucena v. United States Coast</u>

<u>Guard</u>, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal citation and quotation marks omitted)).

Thus, an agency may conduct an adequate search under FOIA without locating any responsive records.  Furthermore, even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable.  See Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Thus, "[t]he search need only be reasonable; it does not have to be exhaustive."  Miller v. United States Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing Nat'l Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see also SafeCard Services v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).  Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir.), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Services, 926 F.2d at 1200).

Thus, once the agency has met its burden regarding the adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.  See Carney, 19 F.3d at 813; SafeCard Services, 926 F.2d at 1200; Maynard v. CIA, 986

F.2d 547, 559-60 (1st Cir. 1993).

### A.   DOJ CRM's Search for Records Responsive to Plaintiff's Request.

Plaintiff submitted a FOIA request, dated April 14, 2010, addressed to "Rena Y. Ki[m], Chief, FOIA/PA Unit, Criminal Division, Department of Justice."  SFNGD No. 1; Cunningham Decl., ¶ 7 & Ex. 1 thereto. Specifically, in his request, Plaintiff asked DOJ CRM for copies of the following records:

> a.   Any memos, email communications, reports, legal opinions, or other documents related to the government's acquisition (either compelled, or voluntary disclosure by the carrier) of cellular location information (including but not limited to Call Detail Records) regarding individuals who are roaming, and thus not using their own carrier's network, and are instead using another wireless telecommunications carrier to which the individual is not a subscriber.

> b.   Any memos, email communications, reports, legal opinions, or other documents related to government requests for location of called parties in "hybrid" orders - e.g. requests that a carrier provide the government with subscriber and toll records for each number called by the target including cell site or location information associated with each call for a particular period. [Footnote omitted.]

> c.   Any memos, email communications, reports, legal opinions, or other documents related to government agents requesting and obtaining non-content header information (such as "to" and "from" addresses) associated with individuals' email communications that have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and not via a 18 USC 2703(d) order).  I also request any information regarding refusals by some Internet Service Providers to deliver such noncontent header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs.

Id., ¶ 7 & Ex. 1, pp. 1-2.  Plaintiff clarified that "I am particularly interested in any information held by the Office of Enforcement Operations, the Computer Crime [and] Intellectual Property Section ["CCIPS"].  The scope of this request is anything created between January 1, 2007 and April 13,

5

2010." Id., ¶ 7 & Ex. 1, p. 2.

DOJ CRM conducted a reasonable search of agency files for records responsive to Plaintiff's FOIA request by identifying OEO and CCIPS as the source of potentially responsive records. John Cunningham explained the functions of these components in his declaration. SFNGD Nos. 4-6; Cunningham Decl., ¶ 9. DOJ CRM initiated searches for records in CCIPS and OEO on May 7, 2010. SFNGD No. 3; Cunningham Decl., ¶ 9 & Exs. 3 and 4..

               1.       Office of Enforcement Operations.

OEO, and in particular, its Electronic Surveillance Unit ("ESU") is responsible for reviewing all applications seeking to use electronic surveillance in federal criminal investigations. SFNGD No. 4; Cunningham Decl., ¶ 9; see also 18 U.S.C. 2510 et seq. ("Title III."). These applications are submitted by the United States Attorneys' Offices to the Criminal Division on behalf of the federal law enforcement agencies that want to use this investigative technique in their investigations. Id.. Once the Unit reviews the application and finds that it meets all of the statutory and policy requirements, the application is forwarded to the Office of the Assistant Attorney General, Criminal Division, where a Deputy Assistant Attorney General reviews the application and either approves or denies the request. Id. OEO does not initiate or conduct any criminal investigations. Id.

               2.       Computer Crime and Intellectual Property Section.

CCIPS is responsible for implementing the Department's national strategies in combating computer and intellectual property crimes worldwide. SFNGD No. 5; Cunningham Decl., ¶ 9. The Section's attorneys work to improve the domestic and international infrastructure - legal, technological, and operational - to pursue network criminals most effectively. Id. CCIPS attorneys regularly run complex investigations. Id.

OEO and CCIPS' attorneys resolve unique legal and investigative issues raised by emerging computer and telecommunications technologies and train federal, state, and local law enforcement personnel.  SFNGD No. 6; Cunningham Decl., ¶ 9.   The Section attorneys provide substantive expertise to the DOJ leadership on these issues, which includes commenting on and proposing legislation.  Id.  In developing their expertise and forming their opinions on various strategies, the Sections' attorneys consult with other department attorneys, and in particular, Assistant United States Attorneys, who utilize the various electronic surveillance techniques on a regular basis.  Id. These consultations are often done in the context of presentations that OEO and CCIPS attorneys give to Assistant United States Attorneys regarding developments in various areas of electronic surveillance.  Id.

> 3.     Responsive Records.

As a result of these searches, DOJ CRM located records responsive to Plaintiff's request in DOJ CRM's CCIPS and OEO Sections:  approximately 186 pages originated from DOJ CRM, one-page originated from the United States Marshals Service ("USMS"),[1] and approximately 418 pages originated from the Executive Office for United States Attorneys ("EOUSA") (or a particular United States Attorney's Office).  SFNGD No. 7; Cunningham Decl., ¶ 10.  DOJ CRM then began to process these records under FOIA.

On October 6, 2010, DOJ CRM referred the records originating from EOUSA and USMS to those agencies for processing and a direct response to Plaintiff, consistent with DOJ's regulation at 28 C.F.R. § 16.4(c)(2), which establishes a presumption that the component/agency from which

---

[1]     The one-page document described as originating from the USMS is listed and described as Item 14 in DOJ CRM's Vaughn index.

a record originates is best able to determine whether to disclose it. SFNGD No. 8; Cunningham

Decl., ¶ 11 & Exs. 5 & 6.  Because the document referred to the USMS is a one-page email, DOJ

CRM did not ask the USMS for a separate Vaughn declaration and explains the basis for the

withholding of this record in its entirety in its Vaughn declaration as Item 14.  SFNGD No. 8;

Cunningham Decl., ¶ 28.

DOJ CRM located a 299-page manual entitled Searching and Seizing Computers and

Obtaining Electronic Evidence in Criminal Investigations and referred the manual to EOUSA for

processing under FOIA.  SFNGD No. 9; Cunningham Decl., ¶ 12.  Subsequent review revealed that

the manual, while published by EOUSA, was written by attorneys in the CCIPS Section of the

Criminal Division.  Id.  Once it was determined that the manual has been made public and can be

accessed     through     the     DOJ     internet     website,

http://www.justice.gov/criminal/cybercrime/ssmanual/04ssma.html, DOJ CRM so notified Plaintiff

and also released a few pages that had been previously withheld.  SFNGD No. 9; Cunningham Decl.,

¶ 13 (part 2) n.4 & Ex. 6   Chapter 4 of the manual, entitled "Electronic Surveillance in

Communications Networks," is relevant to Plaintiff's FOIA request.  Id.

As to the remaining records, after review, DOJ CRM decided to withhold them pursuant to

FOIA exemptions set forth in 5 U.S.C. § 552(b)(2), (5), (6), (7)(C) and (7)(E).  SFGND No. 10;

Cunningham Decl., ¶ 13 (part 1).  The records withheld from release are identified as Items 1-14 in

the Vaughn index attached to the Cunningham declaration.  Id.  Mr. Cunningham explained that in

light of the Supreme Court's decision in Milner v. Navy, 131 S. Ct. 1259 (2011), DOJ CRM no

longer relies on 552(b)(2) as a basis for withholding certain material. Id., ¶ 13 (part 1) n. 3.

On October 6, 2010, EOUSA received a referral from DOJ CRM of records located in a

search conducted in response to Plaintiff's FOIA request letter dated April 14, 2010. SFNGD No. 14; Declaration of John Boseker ("Boseker Decl."), Attorney Advisor, EOUSA, ¶ 6 & Ex. A.

By letter dated February 11, 2011, EOUSA notified Plaintiff that it had reviewed the records referred, and determined that all 417 pages of referred records would be withheld from disclosure by application of the FOIA exemption found at 5 U.S.C. § 552 (b)(3) in conjunction with the statutory authority contained 18 U.S.C. §§ 2705(b), 3123(b), 3103(a) and Court documents sealed under this statutory authority. SFNGD No. 15; Bosker Decl., ¶ 7 & Ex. B. EOUSA also advised Plaintiff that it was withholding records under 5 U.S.C. §§ 552 (b)(2), (b)(5), (b)(7)(C), and (b)(7)(E). Id. EOUSA no longer asserts Exemption (b)(2) for the same reasons as DOJ CRM (see p. 8 supra & SFNGD No. 10). SFNGD No. 20; Boseker Decl, ¶ 12. Finally, EOUSA has refined the statutory citations it relies on in asserting Exemption (b)(3) to those asserted in the Vaughn index attached to the Boseker declaration. Id.

The Cunningham and Boseker declarations, Vaughn indices and exhibits thereto establish that DOJ CRM has made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, and therefore has conducted a search of all locations that are likely to yield documents responsive to Plaintiff's FOIA requests. All responsive documents located have been released, or to the extent information has been withheld under FOIA Exemptions. DOJ CRM's search for responsive records was therefore adequate and the Court should enter summary judgment in favor of Defendant.

## B. Sufficiency of the Agency's Declarations and Vaughn Indices.

Summary judgment in FOIA cases may be awarded "based solely on the information provided in [agency] affidavits or declarations when the affidavits or declaration describe 'the

9

justifications for non-disclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" <u>Fischer</u>, 596 F.Supp.2d at 42 (quoting

<u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)).  The Cunningham and Boseker

declarations and <u>Vaughn</u> indices demonstrate that DOJ CRM and EOUSA carefully reviewed

responsive records, and properly withheld information subject to FOIA exemptions.

The Court should find that the Cunningham and Boseker declarations and indices are

sufficient under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974)

because the declarations and coded indices "are adequate to inform plaintiff of the nature of the

information withheld and to permit the Court to determine the applicability of each exemption

claimed.  Any more specificity would result in disclosure of the very information withheld."

<u>Fischer</u>, 596 F.Supp.2d at 44.

## II.   DEFENDANT PROPERLY APPLIED FOIA EXEMPTIONS AND ALL NON-EXEMPT RESPONSIVE RECORDS HAVE BEEN RELEASED.

DOJ CRM AND EOUSA have withheld responsive records in OEO and CCIPS files under

FOIA Exemptions 3, 5, 6, 7(C) and 7(E),  5 U.S.C. §§ 552(b)(3), (b)(5), (b)(6), (7)(C) and 7(E).  The

Court should enter summary judgment in favor of Defendant as to its assertion of each of these

exemptions to withhold responsive material.

### A.   DOJ CRM Documents.

DOJ CRM's <u>Vaughn</u> index, which is attached to the Cunningham declaration, lists 13

documents and the document referred to USMS.  DOJ CRM withheld portions of each document

based on Exemption 5 in conjunction with other FOIA exemptions.  Specifically, DOJ CRM has

identified the following responsive documents:

(1)     PowerPoint presentation to DOJ attorneys/AUSAs ("Leveraging Emerging Technologies in Prosecuting Cases") discussing legal issues including location information for wireless devices  (31 pages).

(2)     OEO Manual – Part I: "Obtaining Location Information from Wireless Carriers" (16 pages).

(3)     Draft version of #2  (35 pages).

(4)     Draft version of #2  (15 pages).

(5)     PowerPoint presentation to DOJ attorneys/AUSAs discussing legal issues including location information for wireless devices ("Location Information for Wireless Devices, Social Networking, Seizure and Analysis of Computers") (33 pages).

(6)     PowerPoint presentation to DOJ attorneys/AUSAs discussing legal issues including location information for wireless devices ("Can You Search Me Now? – Investigating Wireless 'Phones'") (20 pages).

(7)     PowerPoint presentation to DOJ attorneys/AUSAs discussing legal issues including location information for wireless devices ("Current Legal Issues in Wireless Phone Location") (15 pages).

(8)     Attorney notes to aid in PowerPoint presentation to DOJ attorneys/AUSAs discussing legal issues including location information for wireless devices ("Real-Time Electronic Surveillance") (6 pages).

(9)     PowerPoint presentation to DOJ attorneys/AUSAs, with handwritten notes interlineated, to aid in discussion of legal issues including location information for wireless devices (8 pages).

11

(10)     Emails discussing search warrant (2 pages).

(11)     Legal analysis and responses to issues raised by various attorneys in drafting OEO manual, (#2) (5 pages).

(12)     Draft of possible guidance for obtaining search warrants (2 pages).

(13)     Comments regarding draft documents that would provide guidance to AUSAs regarding specific legal issues including "Obtaining Location Information from Wireless Carriers" (3 pages).

(14)     USMS referral.  Email [dated July 22, 2009] from a USMS employee to AUSAs and CCIPS attorneys seeking guidance and legal advice involving the use of electronic surveillance techniques in a narcotics investigation (1 page).

## B.     EOUSA Referral Documents.

EOUSA's Vaughn index, which is attached to the Boseker declaration, lists 4 documents including the CCIPS manual that is publicly accessible on the DOJ internet website and therefore not subject to withholding under FOIA.  EOUSA withheld Documents 2 and 3 in their entirety under Exemption 3 in conjunction with other FOIA exemptions.  EOUSA withheld Document 4 under Exemption 5 in conjunction with other FOIA exemptions.  Specifically, EOUSA lists the following four documents:

(1)     CCIPS manual.

(2)     "In the Matter of Application and Order [re: Pen Register, etc.]" (86 pages). EOUSA's Vaughn index describes this category of records as consisting entirely of specific third party individual criminal case prosecution filings in the United States District Courts of Eastern District of New York, Maryland, and Northern District of Illinois, and further describes as

12

"[a]pplications for Orders & Orders, authorizing the use of pen registers, trap and trace devices, []

filed ex parte and under seal pursuant to the afore-referenced statutes, authorizing the installation

and use of a pen register in particular criminal cases on specified third party individual targets,

except for one Memorandum of Law filed in a federal grand jury matter concerning the same subject

matter.

(3)     E-mail from USMS Legal Advisor to other USDOJ Attorneys with

attachments (undated) (21 pages).  EOUSA's <u>Vaughn</u> index describes this category of records as

consisting of intra-agency e-mail from Legal Advisor rendering legal opinion and recommendations,

soliciting responses from recipients, regarding the use of draft models attached respecting sealed

applications, affidavit, and orders for use in the types of cases identified in Document 2 above.

(4)     E-mail communications between various AUSAs and USAOs and Criminal

Division attorneys (9/09-12/09) (9 pages).   EOUSA's <u>Vaughn</u> index describes this category of

records as consisting of intra-agency communications between AUSAs in various USAOs and

Criminal Division attorneys discussing legal issues and actual third party individual criminal cases

involving "cell site" data, and the substance of exchanges concern legal analyses, alternative

theories, and legal views both theoretical and as applied and recommendations concerning these

matters.

## C.     DOJ CRM Asserted Exemption 5 in Conjunction With Exemptions 6/7(C) and 7(E).

1.     <u>Exemption 5</u>.

Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party other than an agency in litigation with the

agency."  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted Exemption 5 as allowing an

agency to withhold from the public documents which a private party could not discover in civil litigation with the agency. <u>U.S. v. Weber Aircraft Corp.</u>, 465 U.S. 792, 799 (1984); <u>National Labor Relations Board v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 148 (1975). Exemption 5 therefore protects from disclosure documents that "fall within the ambit of a privilege" such that they would not be "routinely or normally" disclosed in civil discovery. <u>Dep't of the Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001); <u>Federal Trade Commission v. Grolier, Inc.</u>, 462 U.S. 19, 26-27 (1983); <u>Martin v. Office of Special Counsel, Merit Systems Protection Board</u>, 819 F.2d 1181 (D.C. Cir. 1987). Thus, Exemption 5 allows an agency to invoke traditional civil discovery privileges, including the attorney-client privilege, attorney work-product privilege, and the executive deliberative process privilege, to justify the withholding of documents that are responsive to a FOIA request. <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 862 (D.C. Cir. 1980).

FOIA Exemption 5 incorporates the traditional privilege accorded to "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." <u>Mead Data Cent., Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 252 (D.C. Cir. 1997). Unlike the attorney work-product privilege, also protected under Exemption 5, the attorney-client privilege is not limited to the context of litigation. <u>See</u> <u>Elec. Privacy Info. Ctr. v. DHS</u>, 384 F.Supp.2d 100, 114 (D.D.C. 2005) (citing, <u>e.g.</u>, <u>Mead Data</u>). Moreover, although it fundamentally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinion given by an attorney to his client based upon, and thus reflecting, those facts. <u>See</u> <u>id.</u> (noting that the privilege protects attorney's advice based upon facts provided by the client).

The deliberative process privilege is incorporated into FOIA Exemption 5. <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151 (1975). This privilege protects the "quality of agency decisions."

Id.  The content or nature of the document is the focus of the inquiry into the privilege as opposed

to the manner in which the exemption is raised in a particular situation.  See Dow Jones & Co., Inc.

v. Dep't of Justice, 917 F.2d 571, 575 (D.C. Cir. 1990).  The policy underlying this privilege is to

encourage open, frank discussions of policy matters between government employees, consultants

and other officials, to protect against premature disclosure of proposed policies before they become

final, and to protect against public confusion by disclosing reasons and rationales that were not in

fact the ultimate grounds for the agency's action.  See, e.g., Russell v. Dep't of the Air Force, 682

F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866

(D.C. Cir. 1980).

          In order for a record to be protected by the deliberative process privilege, it must be:  (1) an

inter-agency or intra-agency document, and (2) pre-decisional and deliberative.  See Klamath, 532

U.S. at 8-9.  Records are predecisional if they are "generated before the adoption of an agency

policy"and deliberative if they "reflect[] the give-and-take of the consultative process."  See Coastal

States, 617 F.2d at 866.  "Drafts" and "briefing materials" are therefore similar to advisory opinions,

recommendations, and deliberations, and are generally exempt from disclosure under the

deliberative process privilege.  Coastal States Gas Corp., 617 F.2d at 866 ("The exemption thus

covers recommendations, draft documents, proposals, suggestions, and other subjective documents

which reflect the personal opinions of the writer rather than the policy of the agency."); DOI v.

Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck &

Co., 421 U.S. 132, 150 (1975)) (The deliberative process privilege covers documents "reflecting

advisory opinions, recommendations, and deliberations comprising part of a process by which

governmental decisions and policies are formulated."); Montrose Chemical Corp. v. Train, 491 F.2d

63 (D.C.Cir.1974) (memorandum summarizing testimony prepared for agency official before that official renders final judgment).

To withhold a responsive document under the deliberative process privilege, the agency must demonstrate that the document is "both predecisional and deliberative." Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." Coastal States, 617 F.2d at 866. The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. The deliberative process privilege reflects Congress's judgment that public disclosure of predecisional, deliberative documents would inhibit "the full and frank exchange of ideas on legal policy matters" within an agency. Mead Data Cent. v. U.S. Dep't of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977). The Supreme Court has commented that, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." United States v. Nixon, 418 U.S. 683, 705 (1974).

2.      Exemption 7.

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); see FBI v. Abramson, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. See Pratt v. Webster, 673 F.3d 408, 413 (D.C. Cir. 1982). In

assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. Department of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt, 673 F.2d at 420 n.32). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. United States Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt, 673 F.2d at 418). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

Here, DOJ CRM and the individual United States Attorney's Offices with which it consults clearly satisfy the standard for invoking Exemption 7 of the FOIA because of their law enforcement mission. See Description of Functions of OEO and CCIPS supra at I.A.1 and I.A.2. See also Rugiero v. United States Dep't of Justice, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well."). Furthermore, the various records at issue in this case were compiled for criminal law enforcement purposes during the course of each component's performance of their law enforcement missions, including the investigation of criminal activities. Id. Thus, there can be no doubt that the underlying criminal investigations fall within the

law enforcement duties of each component.   Accordingly, the information readily meets the threshold requirement of Exemption (b)(7).

        3.    <u>Exemption 7(E).</u>

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).   The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions.   <u>Smith v. Bureau of Alcohol, Tobacco and Firearms</u>, 977 F. Supp. 496, 501 (D.D.C. 1997) (citing <u>Fisher v. United States Dep't of Justice</u>, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), <u>aff'd</u>, 968 F.2d 92 (D.C. Cir. 1992)).

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); see also <u>Mayer Brown LLP v. IRS</u>, -- F.3d –, 2009 WL 1025344, slip op. at 2-3 (D.C. Cir. April 17, 2009) ("the importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").   Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g., <u>PHE, Inc. v. United States Dep't of Justice</u>, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI

guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F. Supp. 21, 30 (D.D.C. 1996) (applying Exemption 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

4.   DOJ CRM Properly Asserted Exemption 5 in Conjunction with Exemption 7(E).

a.   DOJ CRM Document 1.

Document 1 of DOJ CRM's Vaughn index consists of the slides used by a Criminal Division supervisor in lecturing other Department of Justice attorneys regarding "Leveraging Emerging Technologies in Prosecuting Cases: Opportunities and Challenges."  Cunningham Decl., ¶ 16. Plaintiff was provided with the opening slide describing the topic and lecturer, a slide describing the Computer Crime and Intellectual Property Section, and a slide indicating who the attendees could contact if they had questions (three pages).  Id.  DOJ CRM properly withheld all other slides pertaining to the substantive lecture during which legal and tactical strategies for obtaining evidence in furtherance of criminal investigations were discussed (28 pages).  Id.  These training sessions are attended solely by federal law enforcement officials engaged in the enforcement of federal criminal laws.  Id.

DOJ CRM properly relied on FOIA Exemption 5 to justify its withholdings of internal deliberative information from Item 1.  See Cunningham Decl., ¶ 16.  The information withheld by CRM is both predecisional and deliberative.  The slides were used as an outline to generate discussions between the CCIPS attorney and the Assistant United States Attorneys who would be conducting investigations, to discuss various factual scenarios and the legal basis for choosing specific strategies.  Id.  The purpose of the lectures was to discuss with Assistant United States

19

Attorneys issues that might arise if they selected certain investigative techniques and how that might impact their ability to establish their case.  Id.

DOJ CRM also properly determined that these slides were attorney work product.  Id.  The attorney work product privilege protects tangible and intangible items (such as interviews, memoranda, correspondence, mental impressions, and personal beliefs) prepared or developed by an attorney in anticipation of litigation, based upon the recognition that proper preparation of a case depends on an attorney's ability to assemble information, sort relevant from irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny.  See Mead Data, 566 F.2d at 252.  The Courts have held that documents that provide tips on handling future litigation are also covered by the work product privilege.  See, e.g., Hunt v. United States Marine Corps., 935 F. Supp. 46, 53 (D.D.C. 1996).  In addition, unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation.  See Elec. Privacy Info. Ctr. v. DHS, 384 F.Supp.2d 100, 114 (D.D.C. 2005) (citing, e.g., Mead Data).

Finally CRM relied upon FOIA Exemption 7(E) in withholding this item.  Cunningham Decl., ¶ 18.  Exemption 7(E), as stated, protects information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Here, the information was compiled for law enforcement purposes.  CRM's OEO and CCIPS advise Federal law enforcement, including Assistant United States Attorneys, regarding various electronic surveillance issues, both legal and strategic.  Cunningham Decl., ¶ 18.  The records located in response to Plaintiff's request were compiled in relation to OEO and CCIPS's fulfillment of that

role.  Id.  The information contained in these slides describes the various legal and investigative techniques that should be considered by investigators and Assistant United States Attorneys in conducting their criminal investigations.  Id.  Disclosure of this type of information could provide criminals the information necessary to evade or thwart detection by federal law enforcement.[11]  Id.

> b.    DOJ CRM Documents 2-4.

Document 2 in DOJ CRM's Vaughn index is part of the OEO Manual which is made available to federal prosecuting attorneys to give them legal guidance and possible strategies for "Obtaining Location Information From Wireless Carriers."  Cunningham Decl., ¶ 19.  Documents 3 and 4 are drafts of Item 2. CRM relied on Exemptions 5 and 7(E) for the same reasons as described as to Document 1.  See supra.  One of OEO's functions is to advise its clients, the investigators and prosecuting attorneys of the Department of Justice, regarding legal and investigative strategies and techniques they may want to utilize in conducting criminal investigations.  Cunningham Decl., ¶ 19.  The manual, including Document 2, is made available only to law enforcement personnel, and was written by OEO attorneys for use by those investigators.  Id.  Its public disclosure would assist criminals in adjusting their illegal activity techniques to avoid detection by law enforcement.  Id.  This manual, while covering the same subject matter, is different than the CCIPS manual, which is available to Plaintiff and the public.  Id.  In creating the publicly available manual, DOJ CRM attorneys were careful to withhold details that would jeopardize law enforcement techniques while still making available to the public an explanation of the more general issues.  Id.

_____

[11]    While the slides are fairly general and in outline form, their disclosure and the identification of the topics discussed, and just as importantly the topics that were not addressed, could aid individuals in developing strategies that would avoid detection and instead select methods that are not scrutinized as much by federal law enforcement. Cunningham Decl., ¶ 18 n.5.

c.      DOJ CRM Documents 11-13.

Documents 11, 12 and 13 in DOJ CRM's <u>Vaughn</u> Index are informal memos shared between attorneys in OEO and CCIPS discussing the drafting of the OEO manual noted in Documents 2, 3, and 4, as well as other possible legal guidance for obtaining warrants and other information. Cunningham Decl., ¶ 27.  The memos are not formal, they are not addressed to anyone, nor is the author(s) identified.  <u>Id.</u>  The memos were used to aid a discussion between DOJ CRM attorneys, to highlight different points of views and alternative ways of addressing issues, and to decide whether or not to formulate a specific policy regarding certain investigative and legal strategies. CRM withheld this document under FOIA Exemptions 5 and 7(E).  <u>Id.</u>  The information withheld is both predecisional and deliberative.  <u>Id.</u>  Providing the documents "would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  <u>Id.</u>; 5 U.S.C. § 552(b)(7)(E).

5.      Exemptions 6 and 7(C).

In <u>Fischer</u>, the Court determined that the FBI properly withheld information under FOIA Exemption 7(C), the Court did "not address defendant's claim that the information was also properly withheld under Exemption 6."  596 F. Supp. 2d at 47 n. 17.  The Court's reasoning applies as well to the information withheld in this case under these exemptions.

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[12]   The Supreme Court

affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish,

541 U.S. 157 (2004). Accordingly, once the agency has demonstrated that the records were compiled

for law enforcement purposes, the Court must next consider whether the release of information

withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(7)(C).  This determination necessitates a balancing of the individual's right to

privacy against the public's right of access to information in government files.  See, e.g., Reporters

---

[12]  Exemption 6 of FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982)).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." United States Dep't of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 763 (1989).

The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for ... [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" Lepelletier, 164 F.3d at 46 (citing United States Dep't of Defense v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992) (quoting Department of Air Force v. Rose, 425 U.S. 352, 372 (1976)).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (quoting United States Dep't. of Defense v. FLRA, 510 U.S. 487, 497 (1994) (editing in original); see also Reporters Committee, 489 U.S. at 773.  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775.  Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Fed.  Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

23

Committee, 489 U.S. at 776-780; Oguaju v. United States, 288 F.3d 448 (D.C. Cir. 2002), vacated

124 S.Ct. 1903 (2004), reinstated, 378 F.3d 1115 (D.C. Cir.), modified, 386 F.3d 273 (D.C. Cir.

2004); Beck v. Department of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  The plaintiff bears the

burden of establishing that the "public interest in disclosure is both significant and compelling in

order to overcome legitimate privacy interests."  Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995)

(citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987)).  Accord

SafeCard Services, 926 F.2d at 1206 (public interest in disclosure of third party identities is

"insubstantial").

Consequently, in order to trigger the balancing of public interests against private interests,

a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one,

an interest more specific than having the information for its own sake," and (2) "show the

information is likely to advance that interest."  Boyd v. Criminal Division of United States Dep't

of Justice, 475 F.3d 381, 366, (D.C. Cir. 2007) (citing Favish, 541 U.S. at 172).  It is the "interest

of the general public, and not that of the private litigant" that the Court considers in this analysis.

Ditlow v. Schultz, 517 F.2d 166, 171-72 (D.C. Cir. 1975).

Finally, only where the requester can produce meaningful evidence  –  "more than a bare

suspicion" – which would cause a reasonable person to believe that the government had engaged in

impropriety should the Court even consider balancing the privacy interests against the public interest

in disclosure.  Favish, 124 S. Ct. at 1581.  Plaintiff here cannot allege any such impropriety.

Exemption 7(C) has been held to protect the identity of a number of categories of individuals

identified in law enforcement records.  First, the names of law enforcement officers (and support

staff) who work on criminal investigations have traditionally been protected against release by

24

Exemption 7(C).  Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. United States Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980); Fischer, 596 F.Supp.2d at 46-47; Ray v. FBI, 441 F. Supp. 2d 27, 34-35 (D.D.C. 2006); Truesdale v. U.S. Dept. of Justice, No. 03-1332, 2005 WL 3294004, at *6 (D.D.C. Dec. 5, 2005).  Releasing their identities and information pertaining to these individuals would place each of these persons in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a law enforcement investigatory file.  See Keys, 510 F.Supp.2d at 128 ("One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.").

Second, disclosure of the identities of  third-party individuals who were of investigative interest to law enforcement because of their criminal activities is also protected.  Not only could these third parties face reputational harm if their identities were disclosed, but they could also face acts of reprisal.  Russell v. FBI, No. 03-0611, 2004 WL 5574164, at *6 (D.D.C. Jan. 9, 2004); Blanton v. Dep't of Justice, 63 F.Supp.2d 35, 46 (D.D.C. 1999).  Moreover, the "[d]isclosure of [the third parties'] identities would not shed light on the FBI's performance o[f] its statutory duties to enforce the law."  Russell, 2004 WL 5574164, at *6.

Third, "[t]he names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files have been consistently protected from disclosure."  See Russell, 2004 WL 5574164 at *5;  Coleman v. FBI, 13 F.Supp.2d. 75, 80 (D.D.C. 1998) ("The categorical withholding of any law enforcement records that identify third parties has

been repeatedly upheld") (citations omitted).

Fourth, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996); Nation Magazine, 71 F.3d at 893;  Lesar, 636 F.2d at 487-88; Fischer, 596 F.Supp.2d at 47-48; Farese v. United States Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  Accordingly, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Services, 926 F.2d at 1205; Ray, 441 F.Supp.2d at 35 ("Exemption 7(C) recognizes that the stigma of being associated with a law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation . . . .").  Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

> 6.    DOJ CRM Properly Asserted Exemption 5 in Conjunction
>        with Exemptions 6/7(C) (and other Exemptions).

> a.    DOJ CRM Documents 5-9.

Documents 5, 6, 7, 8, and 9 in DOJ CRM's Vaughn index are similar to Document 1, namely slides of various iterations of PowerPoint presentations, utilized by OEO or CCIPS attorneys, in discussing legal issues and strategies pertaining, in part, to obtaining location information for wireless devices in the course of criminal law enforcement investigations. Cunningham Decl., ¶ 20. DOJ CRM relied on Exemptions 5 and 7(E) in withholding this information for the reasons

26

described for Document 1.  Id.  In addition, as noted in the Vaughn index, some of the copies of these slides, Documents 8 and 9, include handwritten notes of the presenters.  These notes were made by the presenters to assist them in leading the discussions with the other Department of Justice attorneys regarding legal issues and their possible impact on the selection of future investigative strategies.  Thus, the notes are also being withheld under Exemptions 5 and 7(E).

Finally, some of the slides in Documents 5-9 contain the names and other identifying information regarding the presenter(s).  Cunningham Decl., ¶ 21.  DOJ CRM relied on Exemptions 6 and 7(C) in withholding that information.[12]  Id.  Exemption 7(C), as stated, permits the withholding of information compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).  Here, the information was compiled for law enforcement purposes.  Cunningham Decl., ¶ 23.  DOJ CRM's OEO and CCIPS advise Federal law enforcement, including Assistant United States Attorneys, regarding various electronic surveillance issues, both legal and strategic.  Id.  The records located in response to Plaintiff's request were compiled in relation to OEO and CCIPS's fulfillment of that role.  Id.

Because the names of supervisor's and their contact information are readily available to the public, DOJ CRM has disclosed that information, where it was contained in these documents, to Plaintiff.  Cunningham Decl., ¶ 25.  However, the OEO and CCIPS employees, whose names and e-mail addresses were withheld, have recognized privacy interests in references to them contained

---

[12]   Exemption 6, as stated, permits the withholding of personnel, medical, or other similar files where disclosure would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6).  The term "similar files" in Exemption 6 is generally read broadly to encompass any file containing information that applies to a particular person.  Cunningham Decl., ¶ 21.  Here, the information withheld – names and an e-mail address – plainly applies to particular people.  Id.

in law enforcement files.  Id.  Public identification of the line attorneys could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives.  Id. Conversely, disclosure of these individuals' names and an e-mail address would not contribute significantly to the public's understanding of Government activities or operations.  Id.

> b.    DOJ CRM Document 10.

Document 10 in DOJ CRM's Vaughn index is an email discussion regarding a request for assistance and guidance from an AUSA regarding a search warrant.  Cunningham Decl., ¶ 26.  DOJ CRM withheld this document under FOIA Exemptions 5, 6, 7(C) and 7(E).  Id.  Disclosure of even general guidance would reveal investigative techniques and considerations that could assist criminals in developing their own techniques for evading detection and Exemptions 5 and 7(E) were properly asserted to protect this information.  Id.  DOJ CRM also withheld the names and email address of the attorneys involved in the investigation and in providing the advice under Exemptions 6 & 7(C).  Id.  As noted supra, public identification of the attorneys could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives.  Id. Conversely, disclosure of these individuals' names and an e-mail address would not contribute significantly to the public's understanding of Government activities or operations.  Id.

> c.    DOJ CRM Document 14 (USMS Referral).

Document 14 in DOJ CRM's Vaughn Index is an email from a USMS employee seeking assistance and guidance from AUSAs and attorneys with CCIPS about electronic surveillance issues he encountered in conducting a narcotics investigation.  Cunningham Decl., ¶ 28.  CRM withheld this document under FOIA Exemptions 5, 6, 7(C) and 7(E).  As noted previously supra, disclosure of even general guidance might reveal investigative techniques and considerations that could assist

criminals in developing their own techniques for evading detection.  Id.  For the same reasons, DOJ CRM also properly withheld the names and email address of the attorneys involved in the investigation and from those whom advice was sought.   Id.

**D.    EOUSA Properly Asserted Exemptions 3 and 5 in Conjunction with Other Exemptions to Withhold EOUSA Documents 2-4 in Their Entirety.**

1.    Exemption 3 (EOUSA Documents 2 and 3).

FOIA Exemption 3 covers matters that are "specifically exempted by statute ... provided that such statute either (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).   EOUSA applied this exemption in conjunction with more than one such statute as more fully discussed below and referenced in the attached Index.  Boseker Decl., ¶ 12.

a.    Rule 6(e)

EOUSA relies on Federal Rule of Criminal Procedure 6(e), which requires secrecy for grand jury proceedings.  Bosker Decl., ¶ 13.  Rule 6(e) qualifies as a statute for purposes of FOIA Exemption 3 because it was affirmatively enacted by Congress.  See North v. U.S. Dept' of Justice, No. 08-1439, 2009 WL 3113243 at *9 (D.D.C. September 30, 2009) (citing Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 867-68 (D.C.Cir.1981). Rule 6(e) bars disclosure of information that would "tend to reveal some secret aspect of the grand jury's investigation such ... as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 582 (D.C.Cir.1987) (internal quotation marks omitted).  Disclosure of a grand jury subpoena would

reveal some secret aspect of the grand jury's investigation. See Kishore v. Department of Justice, 575 F.Supp.2d 243, 255 (D.D.C. 2008) (finding that grand jury subpoenas may not be disclosed under Rule 6(e)).

EOUSA applied this exemption to one record within EOUSA Document 2 in its Vaughn Index. Boseker Decl.¶ 13. The specific record was a Memorandum specifically identified by a grand jury number. Id. Thus, EOUSA properly withheld grand jury material contained in the referral records. Such material is encompassed by the FOIA Exemption 3 based on Rule 6(e) because its disclosure would reveal secret information about the scope of the grand jury's investigation. Nor is there a time limit on Rule 6(e), and courts in this district have routinely upheld the application of Exemption 3 to grand jury proceedings that expired long ago. See, e.g., Covington v. McLeod, No. 08-1220, 2009 WL 2525933, at *1-2 (D.D.C. Aug.19, 2009) (involving records from grand jury proceedings that led to a trial in 1996).

          b.      Pen Register and Sealed Records under Pen Register Statute.

EOUSA also applied this exemption in conjunction with 18 U.S.C. § 3123(d)(2), which states, in pertinent part:

(d)     An order authorizing or approving the installation and use of a pen register or a trap device shall direct that

(1)     the order be sealed until otherwise ordered by the court; and

(2)     the person owning or leasing the line or other facility to which the pen register or trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the court.

Id.  This statute supported application of the exemption in records in Documents 2 and 3, with the exception of the grand jury record in Document 2.  Boseker Decl., ¶¶ 14.

Courts have recognized the Pen Register Statute as one that falls within the ambit of Exemption 3.  See Jennings v. FBI, No 03-1651, slip op. at 11-12 (D.D.C. May 6, 2004); Riley v. FBI, No. 00-2378, 2002 U.S. Dist. LEXIS 2632, at *5-6 (D.D.C. Feb. 11, 2002); Manna v. DOJ, 815 F. Supp. 798, 812 (D.N.J. 1993), aff'd on other grounds, 51 F.3d 1158 (3d Cir. 1995).  Here, with the exception of the grand jury record in EOUSA Document 2, all other records within that document are subject to this statutory exemption and were also specifically identified as having been filed ex parte and/or under seal in their respective district courts. Boseker Decl., ¶ 15.  Under the FOIA, an agency has no discretion to release any record covered by an injunction, protective order, or court seal which prohibits disclosure.  See Robert Tyrone Morgan v. U.S. Department of Justice, 923 F.2d 195 (D.C. Cir. 1991); GTE Sylvania, Inc. v. Consumers Union, 445 U.S.375, 386-387 (1980).  EOUSA, while provided with these records, all of which are those concerning third party individuals, has no information contradicting the ex parte/under seal/grand jury status in which these records were received.  Boseker Decl., ¶ 16.

2.      Exemption 7(C) (EOUSA Documents 2 and 4).

Exemption 7(C), as stated, protects the release of records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  EOUSA has determined that Documents 2 and 4 contain information to which this exemption applies, was compiled for law enforcement purposes concerning the prosecution of criminal defendants (unnamed herein), as well as the names of federal attorneys and agents, involved in the legal analyses contained within the documents identified in the attached

Index.  Boseker Decl., ¶ 21.

EOUSA also applied this exemption to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy.  Id., ¶ 22.  Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them.  Id.  It could also lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case.  Id.  In short, disclosure would be detrimental to the persons protected.

EOUSA also applied this exemption to withhold the identities of individuals such as  special federal agents, other government employees, and local law enforcement personnel all of whom participated in the investigation and prosecution of this case.  Id., ¶ 23.  Individual duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm.  Id.  These persons have protected privacy interests in the conduct of law enforcement investigations and legal analyses.  Id.

Finally, there is no other basis for EOUSA to disclose this information.  Id., ¶ 24.  No authorization or consents to release otherwise privacy protected materials regarding any of the third party individuals,  to whom this exemption was applied, was provided by Plaintiff.  Id.  EOUSA asserts in this regard, that to the extent that the scope of Plaintiff''s request (Documents 2-4) is concerned with policies and practices, there has been no request made for the records of any third party individual, and to that extent, where applied, these same records are arguably not responsive to the request.  Id., ¶ 25.

3.      Exemption 5 (EOUSA Documents 3 and 4).

Exemption 5, as stated, protects disclosure of privileged documents, which are not ordinarily available to a party in litigation.   Principally, there are three such   privileged documents or communications protected by this exemption:   attorney work product, deliberative process, and attorney-client.   EOUSA properly asserted this exemption to protect information pursuant to the attorney work product and deliberative process privileges as to EOUSA Documents 3 and 4. Boseker Decl., ¶ 18.

The records or portions of records to which the attorney work product privilege  was applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to actual and prospective criminal cases.   Id., ¶ 19.   The records were prepared by or at the request or direction of an attorney, and made in anticipation of, during, or derivative of litigation. Id.   The substance of the records withheld in part or in their entirety are exempt from disclosure pursuant to this privilege.   Id.

In addition, these same records, in certain instances, contain deliberative process of Assistant United States Attorneys and Criminal Division attorneys,  and other federal agencies or components, in their consideration of possible uses of investigatory techniques in criminal actions against actual or prospective criminal defendants.   Id., ¶ 20.   To disclose this information would reveal pre-decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies.   Id.   Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making. Id.   The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product.   Id.

33

4.      Exemption 7(E) (EOUSA Documents 3 and 4).

Exemption 7(E), as stated, permits withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law.

EOUSA properly applied this exemption to protect this type of information in Documents 3 and 4 in the attached index. Boseker Decl., ¶ 27. If such procedures were to be released, it would hamper the efforts of the government to carry out its responsibilities and make it easier for those so inclined to violate the law without the same likelihood of being held accountable for their actions. Id. This is particularly true with respect to any future efforts for apprehending the same types of crimes. Id.

## III.   ALL REASONABLY SEGREGABLE MATERIAL HAS BEEN RELEASED TO PLAINTIFF.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data, 566 F.2d at 260; Fischer, 596 F.Supp.2d at 44. The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d

34

at 261.  The agency is not, however, required "to provide such a detailed justification" that the

exempt material would effectively be disclosed.  Id.  All that is required is that the government

show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong v.

Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is

not required to "commit significant time and resources to the separation of disjointed words, phrases,

or even sentences which taken separately or together have minimal or no information content."

Mead Data, 566 F.2d at 261, n.55.

DOJ CRM and EOUSA have processed and released all segregable information from the

responsive documents pursuant to Exemptions 3, 5, 6, 7(C), and 7(E).  More specifically, DOJ CRM

carefully examined the approximately 186 pages of responsive documents originated from DOJ

CRM and the one-page email originated by the USMS.  Similarly, EOUSA carefully examined

approximately 418 pages of referred records. As Mr. Cunningham stated in paragraph 29 of his

declaration:

> 29.    All reasonably segregable, non-exempt information in which CRM possesses
> primary equity has been provided to Plaintiff or he has been made aware of the
> website where they can be accessed.  Whenever possible, CRM released responsive
> documents in part, redacting only that information determined to be exempt (i.e.,
> personal or privileged).[13]  CRM did so after carefully considering and reviewing each
> document to determine whether any non-exempt portions could be redacted and
> released to Plaintiff.  As to the records CRM withheld in full, these records largely
> were either internal lecturing materials or draft/working versions of documents that
> were wholly deliberative.  CRM concluded that these records did not contain any

---

[13]    Even before Plaintiff's request, CRM had decided to make some of the material publicly
available.  Thus there are two manuals, one only available to DOJ law enforcement personnel,
and the second, a carefully redacted version, available to the public on-line, that provides
pertinent information without releasing other material whose disclosure would be harmful to law
enforcement.  To the extent that there are generic forms that could be released without disclosing
personal information or developing investigative strategies, they were included in the public
manual. [footnote in original as n.6]

> non-exempt, non-deliberative material that could be released to Plaintiff or, to the extent any non-exempt information existed, that such information, once segregated, would be nothing more than random words and phrases lacking any meaning, which agencies are not obligated to segregate and disclose.

Cunningham Decl., ¶ 29.  Similarly, Mr. Boseker stated in his declaration:

> 28.     Each document was evaluated to determine if any information could be segregated and released.  The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document, breaching a privilege, exposing critical investigatory techniques, without identifying a third party individual, or violating a court order sealing the third party records or Federal Rule of Criminal Procedure.

Bosker Decl., ¶ 28.

Thus, the two components have released all reasonably segregable, nonexempt information to Plaintiff in response to his FOIA requests to DOJ CRM. Given the nature of the withholdings, it is clear that the DOJ CRM and EOUSA have  properly analyzed these documents and determined that no additional non-exempt material can be segregated and released.  See Cunningham Decl., ¶ 29; Boseker Decl., ¶¶ 28-29.

## **CONCLUSION**

For the foregoing reasons, Defendant requests entry of summary judgment in its favor as to the remaining part of this case.

Respectfully submitted,

RONALD C. MACHEN JR, DC Bar # 447889
United States Attorney for the District of Columbia

RUDOLPH CONTRERAS, DC Bar # 434122
Chief, Civil Division

By:      /s/
       JOHN G. INTERRANTE
       PA Bar # 61373
       Assistant United States Attorney
       Civil Division
       555 4th Street, NW, Room E-4808
       Washington, DC 20530
       Tel:    202.514.7220
       Fax:    202.514.8780
       Email:  John.Interrante@usdoj.gov