# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHRISTOPHER SOGHOIAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11-cv-01080-ABJ |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JOHN E. CUNNINGHAM III

I, John E. Cunningham III, declare the following to be a true and correct statement of facts:

1.      I am an attorney in the Freedom of Information Act/Privacy Act (FOIA/PA) Unit of the U.S. Department of Justice (DOJ), Criminal Division (CRM), where I have worked since November 2011.  Due to my current position, I am aware of the practices and procedures generally employed by CRM's FOIA/PA Unit in responding to requests for information under the FOIA and/or Privacy Act.  My duties include providing litigation support and assistance to Assistant United States Attorneys (AUSAs)/Civil Division (CIV) Trial Attorneys who represent DOJ in lawsuits filed in Federal court under the FOIA and/or Privacy Act stemming from requests for CRM records.  In carrying out my duties, I review processing files compiled by CRM's FOIA/PA Unit in responding to information requests to determine whether searches for records were properly conducted and decisions to withhold or release CRM records were in accordance with the FOIA and Privacy Act, as well as DOJ regulations at 28 C.F.R. §§ 16.1 *et*

*seq.* and §§ 16.40 *et seq.* If searches are incomplete and/or records have not been processed, I ensure that searches are completed and either process or oversee the processing of responsive records by FOIA/PA Unit staff members.  I consult with the FOIA/PA Unit supervisors and staff members of the Unit about the processing of requests; and where necessary, with officials and employees in CRM sections where responsive records are located and with officials and employees in other DOJ components and/or Federal agencies that have equities in responsive records.

2.      I have been employed as an attorney by the Department of Justice since October 1998.  From 1998 until 2011, I was employed as a Trial Attorney with the Fraud Section of CRM.

3.      I have been licensed by the State Bar of Nevada since 1990.

4.      Through the performance of my regularly assigned duties and by reviewing the processing file associated with Plaintiff's FOIA request, I have become familiar with the particular processing of that request.

5.      The statements that follow are made on the basis of my review of CRM's official files and records, my own personal knowledge, and information I acquired in performing my official duties.

6.      CRM has prepared a *Vaughn* Index describing the information being withheld and the exemptions justifying our withholdings, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  Our bases for applying particular exemptions to withhold the information described in our *Vaughn* Index are explained in further detail below.

**CRM'S PROCESSING OF PLAINTIFF'S FOIA REQUEST**

7.      Plaintiff submitted a FOIA request, dated April 14, 2010, to the Department of

Justice via the CRM's FOIA/PA Unit.  In his request, Plaintiff asked for copies of:

> 1.  Any memos, email communications, reports, legal opinions, or other documents
> related to the government's acquisition (either compelled, or voluntary disclosure
> by the carrier) of cellular location information (including but not limited to Call
> Detail Records) regarding individuals who are roaming, and thus not using their
> own carrier's network, and are instead using another wireless
> telecommunications carrier to which the individual is not a subscriber.
>
> 2.  Any memos, email communications, reports, legal opinions, or other documents
> related to government requests for location of called parties in "hybrid" orders -
> e.g. requests that a carrier provide the government with subscriber and toll
> records for each number called by the target including cell site or location
> information associated with each call for a particular period. [Footnote omitted.]
>
> 3.  Any memos, email communications, reports, legal opinions, or other documents
> related to government agents requesting and obtaining non-content header
> information (such as "to" and "from" addresses) associated with individuals'
> email communications that have been opened, or are over 180 days old, based
> upon a showing of relevance to an ongoing investigation (and not via a 18 USC
> 2703(d) order).  I also request any information regarding refusals by some
> Internet Service Providers to deliver such noncontent header information without
> a 2703(d) order, even for communications over 180 days old, and any
> information regarding DOJ's response to the refusal by the ISPs.

A true and accurate copy of Plaintiff's request is attached as Exhibit 1.

8.      CRM acknowledged receipt of Plaintiff's request on May 6, 2010.  A true and

accurate copy of CRM's letter is attached as Exhibit 2.

9.      CRM initiated searches for records in its Computer Crimes and Intellectual

Property Section (CCIPS) and Office of Enforcement Operations (OEO) on May 7, 2010.  True

and accurate copies of CRM's Record Search conducted by CCIPS and OEO, dated May 7,

2010, are attached hereto as Exhibits 3 (CCIPS) and 4 (OEO).[1]  OEO, and in particular, its

Electronic Surveillance Unit (ESU) is responsible for reviewing all applications seeking to use

---

[1]   The signature blocks of the U.S. Government employees responding to the FOIA records search were redacted
in CRM Exhibits 3-4.

electronic surveillance in federal criminal investigations. (See 18 U.S.C. 2510 *et seq.*, "Title III."). These applications are submitted by the United States Attorneys' Offices to the Criminal Division on behalf of the federal law enforcement agencies that want to use this investigative technique in their investigations. Once the Unit reviews the application and finds that it meets all of the statutory and policy requirements, the application is forwarded to the Office of the Assistant Attorney General, Criminal Division, where a Deputy Assistant Attorney General reviews the application and either approves or denies the request. OEO does not initiate or conduct any criminal investigations. CCIPS is responsible for implementing the Department's national strategies in combating computer and intellectual property crimes worldwide. The section's attorneys work to improve the domestic and international infrastructure - legal, technological, and operational - to pursue network criminals most effectively. CCIPS attorneys regularly run complex investigations. Both sections' attorneys resolve unique legal and investigative issues raised by emerging computer and telecommunications technologies and train federal, state, and local law enforcement personnel. They provide substantive expertise to the DOJ leadership on these issues, which includes commenting on and proposing legislation. In developing their expertise and forming their opinions on various strategies, the sections' attorneys consult with other department attorneys, and in particular, Assistant U.S. Attorneys, who utilize the various electronic surveillance techniques on a regular basis. These consultations are often done in the context of presentations that OEO and CCIPS attorneys give to Assistant U.S. Attorneys regarding developments in various areas of electronic surveillance.

10. As a result of these searches, we located records responsive to Plaintiff's request in CRM's CCIPS and OEO; approximately 186 pages originated from CRM, one-page

originated from the U.S. Marshals Service (USMS),[2] and approximately 418 pages originated from the Executive Office of U. S. Attorneys or a U.S. Attorney's Office (EOUSA).

11.     On October 6, 2010, CRM referred the records originating from EOUSA and USMS to those agencies for processing and a direct response to plaintiff, consistent with DOJ's regulation at 28 C.F.R. § 16.4(c)(2), which establishes a presumption that the component/agency from which a record originates is best able to determine whether to disclose it.  True and accurate copies of CRM's referral memoranda are attached as Exhibits 5 (EOUSA) and 6 (USMS).

12.     299 pages of the material referred to EOUSA were a copy of a manual entitled *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations.* Subsequent review revealed that the manual, while published by EOUSA, was written by attorneys in the Criminal Division.  It was also learned the manual has been made public and can be accessed through an internet website:

http://www.justice.gov/criminal/cybercrime/ssmanual/04ssma.html.

13.     As to the remaining records, after review, CRM decided to withhold them pursuant to FOIA exemptions set forth in 5 U.S.C. § 552(b)(2), (5), (6), (7)(C) and (7)(E).  The records withheld from release are identified as Items 1-14 in the attached *Vaughn* Index.[3]

13.     CRM notified Plaintiff of its disposition of his request – including these withholdings and the referrals to the EOUSA and USMS – in a letter dated March 28, 2011.  A true and accurate copy of CRM's response letter is attached as Exhibit 7.[4]

---

[2]     The one-page document described as originating from the USMS is listed and described as Item 14 in CRM's *Vaughn* Index.

[3]     Due to the Supreme Court's decision in *Milner* v. *Navy*, 131 S. Ct. 1259 (2011), CRM no longer relies on 552(b)(2) as a basis for withholding certain material.

[4]     In preparing this declaration, CRM has determined that a few of the pages, previously withheld, will be released to Plaintiff.  It also informed him that some of the material, *i.e.*, the manual identified in paragraph 12, was available

## OIP'S PROCESSING OF PLAINTIFF'S FOIA APPEAL

14.     In a letter received on April 16, 2011, Plaintiff appealed CRM's decision to

DOJ's Office of Information Policy (OIP).  OIP acknowledged receipt of Plaintiff's appeal on

April 28, 2011.  A true and accurate copy of OIP's letter is attached as Exhibit 8.

15.     Plaintiff filed his Complaint for Injunctive Relief on June 13, 2011, by which time

OIP had not made a decision on Plaintiff's appeal.  Because of the filing of the complaint, OIP

closed its review.  A true and accurate copy of OIP's response is attached as Exhibit 9.

## CRM RELEASED ALL REASONABLY SEGREGABLE, NON-EXEMPT INFORMATION AND WITHHELD EXEMPT INFORMATION

16.     Item 1 of CRM's *Vaughn* index consists of the slides used by a Criminal Division

supervisor in lecturing other Department of Justice attorneys regarding "Leveraging Emerging

Technologies in Prosecuting Cases: Opportunities and Challenges."  Plaintiff is being provided

with the opening slide describing the topic and lecturer, a slide describing the Computer Crime

and Intellectual Property Section, and a slide indicating who the attendees could contact if they

had questions (three pages).  CRM withheld all other slides pertaining to the substantive lecture

during which legal and tactical strategies for obtaining evidence in furtherance of criminal

investigations were discussed (28 pages).  These training sessions are attended solely by federal

law enforcement officials engaged in the enforcement of federal criminal laws.

17.     CRM relied on FOIA Exemption 5 to justify its withholdings of internal

deliberative information from Item 1.  Exemption 5 permits agencies to withhold inter- or intra-

agency documents that would not be available in litigation (*i.e.*, attorney-client communications,

attorney work products, and/or deliberative materials).  5 U.S.C. § 552(b)(5).  The information

withheld by CRM is deliberative material subject to the deliberative process privilege, which

_____

to him at http://www.justice.gov/criminal/cybercrime/ssmanual/04ssma.html.  A true and accurate copy of CRM's
letter is attached as Exhibit 6.

protects advisory opinions, recommendations, and discussions comprising part of the process by which governmental decisions are made. Such material is properly withheld if it is both predecisional – *i.e.*, temporally precedes the decision to which it relates – and deliberative – *i.e.*, is part of the process by which the agency makes decisions about matters facing it. The slides were used as an outline to generate discussions between the CCIPS attorney and the Assistant U.S. Attorneys who would be conducting investigations, to discuss various factual scenarios and the legal basis for choosing specific strategies. The purpose of the lectures was to discuss with Assistant U. S. Attorneys issues that might arise if they selected certain investigative techniques and how that might impact their ability to establish their case. CRM also concluded that these slides were attorney work product. The attorney work product privilege protects tangible and intangible items (such as interviews, memoranda, correspondence, mental impressions, and personal beliefs) prepared or developed by an attorney in anticipation of litigation, based upon the recognition that proper preparation of a case depends on an attorney's ability to assemble information, sort relevant from irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny. The Courts have held that documents that provide tips on handling future litigation are also covered by the work product privilege. See *Hunt v. United States Marine Corps*, 935 F. Supp. 46, 53 (D.D.C. 1996).

18.     Finally CRM relied upon FOIA Exemption 7(E) in withholding this item. Exemption 7(E) protects information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Here, the information was compiled for law enforcement purposes. CRM's OEO and CCIPS advise

Federal law enforcement, including Assistant U.S. Attorneys, regarding various electronic surveillance issues, both legal and strategic. The records located in response to Plaintiff's request were compiled in relation to OEO and CCIPS's fulfillment of that role. The information contained in these slides describes the various legal and investigative techniques that should be considered by investigators and Assistant U.S. Attorneys in conducting their criminal investigations. Disclosure of this type of information could provide criminals the information necessary to evade or thwart detection by federal law enforcement.[5]

19.     Item 2 in CRM's *Vaughn* index is part of the OEO Manual which is made available to federal prosecuting attorneys to give them legal guidance and possible strategies for "Obtaining Location Information From Wireless Carriers." Items 3 and 4 are drafts of Item 2. CRM relied on Exemptions 5 and 7(E) for the same reasons as described as to Item 1. One of OEO's functions is to advise its clients, the investigators and prosecuting attorneys of the Department of Justice, regarding legal and investigative strategies and techniques they may want to utilize in conducting criminal investigations. The manual, including Item 2, is made available only to law enforcement personnel, and was written by OEO attorneys for use by those investigators. Its public disclosure would assist criminals in adjusting their illegal activity techniques to avoid detection by law enforcement. This manual, while covering the same subject matter, is different than that which is available to plaintiff and is referenced in paragraph 12. In creating the publicly available manual, CRM attorneys were careful to withhold details that would jeopardize law enforcement techniques while still making available to the public an explanation of the more general issues.

---

[5]     While the slides are fairly general and in outline form, their disclosure and the identification of the topics discussed, and just as importantly the topics that were not addressed, could aid individuals in developing strategies that would avoid detection and instead select methods that are not scrutinized as much by federal law enforcement.

20.     Items 5, 6, 7, 8, and 9 in CRM's *Vaughn* index are similar to Item 1, namely slides of various iterations of PowerPoint presentations, utilized by OEO or CCIPS attorneys, in discussing legal issues and strategies pertaining, in part, to obtaining location information for wireless devices in the course of criminal law enforcement investigations.  CRM relied on Exemptions 5 and 7(E) in withholding this information for the reasons described for Item 1.  In addition, as noted in the *Vaughn* Index, some of the copies of these slides, Items 8 and 9, include handwritten notes of the presenters.  These notes were made by the presenters to assist them in leading the discussions with the other Department of Justice attorneys regarding legal issues and their possible impact on the selection of future investigative strategies.

21.     Finally, some of the slides in Items 5-9 contain the names and other identifying information regarding the presenter(s).  CRM relied on Exemption 6 and 7(C) in withholding that information.

22.     Exemption 6 permits the withholding of personnel, medical, or other similar files where disclosure would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6).  The term "similar files" in Exemption 6 is generally read broadly to encompass any file containing information that applies to a particular person.  Here, the information withheld – names and an e-mail address – plainly applies to particular people.

23.     Exemption 7(C) permits the withholding of information compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).  Here, the information was compiled for law enforcement purposes.  CRM's OEO and CCIPS advise Federal law enforcement, including Assistant U.S. Attorneys, regarding various electronic surveillance

issues, both legal and strategic. The records located in response to Plaintiff's request were compiled in relation to OEO and CCIPS's fulfillment of that role.

24.     Once Exemptions 6 and 7(C)'s thresholds have been satisfied, information may be withheld if individuals have a privacy interest that outweighs any public interest in the information. For purposes of FOIA, a public interest exists in information that would shed light on the Government's performance of its statutory duties and/or that would contribute significantly to the public's understanding of the operations or activities of the Government.

25.     Here, the OEO and CCIPS employees, whose names and e-mail addresses were withheld, have recognized privacy interests in references to them contained in law enforcement files. Because the names of supervisor's and their contact information are readily available to the public, CRM has disclosed that information, where it was contained in these documents, to Plaintiff. Public identification of the line attorneys could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives. Conversely, disclosure of these individuals' names and an e-mail address would not contribute significantly to the public's understanding of Government activities or operations.

26.     Item 10 in CRM's *Vaughn* Index is an email discussion regarding a request for assistance and guidance from an AUSA regarding a search warrant. CRM withheld this document under FOIA Exemptions 5, 6, 7(C) and 7(E). Disclosure of even general guidance would reveal investigative techniques and considerations that could assist criminals in developing their own techniques for evading detection. CRM also withheld the names and email address of the attorneys involved in the investigation and in providing the advice. As noted in the previous paragraph, public identification of the attorneys could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives. Conversely,

disclosure of these individuals' names and an e-mail address would not contribute significantly to the public's understanding of Government activities or operations.

27.     Items 11, 12 and 13 in CRM's *Vaughn* Index are informal memos shared between attorneys in OEO and CCIPS discussing the drafting of the OEO manual noted in Items 2, 3, and 4, as well as other possible legal guidance for obtaining warrants and other information. The memos are not formal, they are not addressed to anyone, nor is the author(s) identified. The memos were used to aid a discussion between CRM attorneys, to highlight different points of views and alternative ways of addressing issues, and to decide whether or not to formulate a specific policy regarding certain investigative and legal strategies. CRM withheld this document under FOIA Exemptions 5, and 7(E). The information withheld is deliberative material subject to the deliberative process privilege, which protects advisory opinions, recommendations, and discussions comprising part of the process by which governmental decisions are made. Such material is properly withheld if it is both predecisional – *i.e.*, temporally precedes the decision to which it relates – and deliberative – *i.e.*, is part of the process by which the agency makes decisions about matters facing it. Providing the documents "would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

28.     Item 14 in CRM's *Vaughn* Index is an email from a USMS employee seeking assistance and guidance from AUSAs and attorneys with CCIPS about electronic surveillance issues he encountered in conducting a narcotics investigation. CRM withheld this document under FOIA Exemptions 5, 6, 7(C) and 7(E). As noted previously in ¶ 26, disclosure of even general guidance might reveal investigative techniques and considerations that could assist

criminals in developing their own techniques for evading detection. For reasons previously cited in ¶ 26, CRM also withheld the names and email address of the attorneys involved in the investigation and from those whom advice was sought.

29.     All reasonably segregable, non-exempt information in which CRM possesses primary equity has been provided to Plaintiff or he has been made aware of the website where they can be accessed. Whenever possible, CRM released responsive documents in part, redacting only that information determined to be exempt (*i.e.*, personal or privileged).[6] CRM did so after carefully considering and reviewing each document to determine whether any non-exempt portions could be redacted and released to Plaintiff. As to the records CRM withheld in full, these records largely were either internal lecturing materials or draft/working versions of documents that were wholly deliberative. CRM concluded that these records did not contain any non-exempt, non-deliberative material that could be released to Plaintiff or, to the extent any non-exempt information existed, that such information, once segregated, would be nothing more than random words and phrases lacking any meaning, which agencies are not obligated to segregate and disclose.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _30th_ day of _January_, 2012.

_____
John E. Cunningham III

---

[6]     Even before Plaintiff's request, CRM had decided to make some of the material publicly available. Thus there are two manuals, one only available to DOJ law enforcement personnel, and the second, a carefully redacted version, available to the public on-line, that provides pertinent information without releasing other material whose disclosure would be harmful to law enforcement. To the extent that there are generic forms that could be released without disclosing personal information or developing investigative strategies, they were included in the public manual.

# EXHIBIT 1

Christopher Soghoian
P.O. Box 2266
Washington DC, 20013
617-308-6368

Rena Y. Kim
Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

April 14, 2010

Sent via fax to: (202) 514 6117

**FOIA REQUEST**
**Fee benefit requested**
**Fee waiver requested**
**Expedited processing requested**

Dear FOIA Officer:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552.

I am seeking information regarding several surveillance practices.

1. Any memos, email communications, reports, legal opinions, or other documents related to the government's acquisition (either compelled, or voluntary disclosure by the carrier) of cellular location information (including but not limited to Call Detail Records) regarding individuals who are roaming, and thus not using their own carrier's network, and are instead using another wireless telecommunications carrier to which the individual is not a subscriber.

2. Any memos, email communications, reports, legal opinions, or other documents related to government requests for location of called parties in "hybrid"[1] orders – e.g. requests

---

[1] Law enforcement agents use "hybrid" orders for cellular location information. Hybrid orders seek to determine a suspect's past and future location based on non-content data transmitted by the suspect's cellular phone. The government has engaged in this type of surveillance by invoking a combination of authorities under the Pen Register Act and the Stored Communications Act. *See In re United States for Order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435, 443-49 (S.D.N.Y. 2005) *see also In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) (denying government request under "hybrid theory"), available at:
http://www.txs.uscourts.gov/district/judges/sws/05MJ557_Cell_site_opinion.pdf.

Fin:Christopher Soghoian

that a carrier provide the government with subscriber and toll records for each number called by the target including cell site or location information associated with each call for a particular period.

3. Any memos, email communications, reports, legal opinions, or other documents related to government agents requesting and obtaining non-content header information (such as "to" and "from" addresses) associated with individuals' email communications that have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and **not** via a 18 USC 2703(d) order). I also request any information regarding refusals by some Internet Service Providers to deliver such non-content header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs.

The information I am seeking spans the entire Criminal Division of the Department of Justice, although I am particularly interested in any information held by the Office of Enforcement Operations, the Computer Crime & Intellectual Property Section. The scope of this request is for anything relevant created between January 1 2007 and April 13 2010.

**News Media Status / Fee Waiver**

As a representative of the news media I am only required to pay for the direct cost of duplication after the first 100 pages.

Since September 2006, I have written the *slight paranoia*[2] blog, which focuses on information security and privacy related issues. Furthermore, from September 2007-March 2009, I was paid to write the *Surveillance State*[3] blog for CNET Networks/CBS Interactive, discussing similar topics.

My blog features a significant amount of in-depth original investigative reporting, and I have broken a number of major stories that later spread throughout the national media. Examples of this include:

In January 2009, I was the first to report that the Obama White House had specifically excluded YouTube from strict federal privacy rules.[4] This story was later picked up by other media outlets[5], and then drew the attention of privacy groups such as the Electronic Frontier Foundation.[6] Less than a week later, the White House revised its privacy policy to remove the YouTube specific language.[7]

---

[2] See: http://paranoia.dubfire.net
[3] See: http://news.cnet.com/surveillance-state/
[4] See: http://news.cnet.com/8301-13739_3-10147726-46.html
[5] See: http://www.readwriteweb.com/archives/white_house_continues_to_give.php and http://www.computerworld.com/s/article/9126954/Cookie_use_in_YouTube_videos_on_WhiteHouse.gov_prompts_privacy_concerns.
[6] See: http://www.eff.org/files/EFF_letter_craig.pdf
[7] See: http://news.cnet.com/8301-13739_3-10150534-46.html

In September 2008, Google announced that it would be taking steps to anonymize the data relating to search engine queries submitted by its millions of users.[8] Major news media sites such as the New York Times and Washington Post soon wrote stories describing Google's move as a "illustrating how seriously [Google takes the issue of] data anonymization."[9] In the days that followed, I contacted Google to get more details of the policy, and discovered that it in fact provided little to no real privacy protection to end users. I wrote a story at CNET describing Google's policy as "propaganda", and explained how little the company was actually doing to protect consumers.[10] Soon, other media outlets began to turn on Google. One British news site called it "Google Privacy Theatre",[11] while an American technology news organization called it a "farce."[12] A prominent US technology journalist wrote that "the announcement was designed to make headlines and appease regulators while doing nothing to release Google's stranglehold on your data."[13] With one single blog post, I turned the media's coverage of Google's new policy from glowing praise, to outright condemnation.

In February 2007, I discovered several security flaws in the TSA Traveler Identity Verification Program web site, which exposed the private information of citizens to theft. I quickly wrote about these on my blog.[14] Others in the media soon picked up the story[15], forcing TSA to take the site offline in order to fix the flaws. One year later, the House Committee for Oversight and Government Reform conducted an investigation of TSA's web security practices, leading to the revelation that the owner of the contracting company which produced and maintained the TSA site was a high school friend and drinking buddy of the TSA manager in charge of the contract.[16]

During peak times, my blog has been viewed by over 200,000 individual persons in a single month, and I continue to be widely cited by other media outlets.

I recognize that I am not a member of the traditional news media or an accredited journalist. However, as you likely are aware, that business model is undergoing rapid change, and bloggers are increasingly playing a leading role in the discovery and dissemination of news. As such, I ask that you grant me a "representative of the news media" fee waiver.

I also believe that I should not be charged search or review fees for this request because I qualify as a researcher at an "educational institution" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(4).

---

[8] http://googleblog.blogspot.com/2008/09/another-step-to-protect-user-privacy.html
[9] http://www.washingtonpost.com/wp-dyn/content/article/2008/09/08/AR2008090802472.html and
http://bits.blogs.nytimes.com/2008/09/09/google-tightens-data-retention-policy-again/
[10] http://news.cnet.com/8301-13739_3-10038963-46.html
[11] http://www.theregister.co.uk/2008/09/12/google_ip_anonymization/
[12] http://blogs.zdnet.com/Google/?p=1139
[13] http://www.infoworld.com/d/windows/smoke-mirrors-and-googles-privacy-policies-532
[14] http://paranoia.dubfire.net/2007/02/tsa-has-outsourced-tsa-traveler.html
[15] http://www.wired.com/threatlevel/2007/02/homeland_securi/
[16] http://www.wired.com/threatlevel/2008/01/cronyism-led-to/ and
http://oversight.house.gov/documents/20080111092648.pdf

I am currently a Ph.D. Candidate at Indiana University. My Ph.D. research primarily relates to computer security and privacy, with a particular focus on the relationship between service providers and the government. See for example, my recent academic article, which has been published in a leading technology law journal.[17]

As an academic researcher, I am widely recognized by my peers and the media as an expert in privacy related issues. One news outlet recently described me as "among the most influential researchers today when it comes to online privacy and advertising." [18]

## Expedited Processing

Please provide expedited processing of this request which concerns a matter of urgency. Both the House and Senate are currently considering overhauling the Electronic Communications Privacy Act, which is the primary statute that protects the privacy of Americans' communications from the government.

For example, in announcing the House Judiciary Committee's plan to hold hearings, Rep. Bobby Scott stated that:

> With the great advances in communications technology we have seen in recent years, and the unprecedented extension of government powers to peer into traditionally private communications, we need to examine whether the lines are appropriately drawn to reflect the level of constitutional protections and liberties citizens expect in their everyday communications.[19]

In addition to interest from Members of Congress, there has also been significant media interest in this issue. In the past two weeks, there have been more than one hundred news articles about the industry/public interest coalition's call for ECPA reform.[20]

The methods by which law enforcement agencies are able to obtain individuals' private information, including location data is thus currently a matter of significant public interest, and thus the public has an urgent need for accurate information about this issue.

As such, I ask that you expedite my request for this information.

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief.

---

[17] Caught in the Cloud: Privacy, Encryption, and Government Back Doors in the Web 2.0 Era, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1421553
[18] http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=111800
[19] http://judiciary.house.gov/news/100330.html
[20] See: http://www.mercurynews.com/breaking-news/ci_14791086
http://news.bbc.co.uk/2/hi/technology/8595775.stm and http://www.fastcompany.com/1602463/digital-due-process-coalition-including-microsoft-google-and-more-call-for-tougher-online-pr

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Christopher Soghoian

EXHIBIT 2



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C.  20530*

CRM-201000285F

Mr. Christopher Soghoian
P.O. Box 2266                                 MAY   6 2010
Washington, DC 20013

Dear Mr. Soghoian:

This is to acknowledge receipt of your letter of April 14, 2010, requesting records of the Criminal Division under the Freedom of Information Act (FOIA). This request has been assigned file number 201000285F. Please refer to this number in any future correspondence with this Unit.

We will conduct a search to determine what records (if any) we have that are within the scope of your request. Once we have completed our search, we will notify you as to our disposition of your request. Please note that this search will encompass only Criminal Division records.

If you have any questions regarding the status of this request, you may contact our Unit at 202-616-0307.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit
Criminal Division

MV
5/5/10                #5/5/10

**FILE COPY**

# EXHIBIT 3

*Soshoian, Christopher*

Criminal Division - FOIA/PA Unit    Records Search - FOIA Request



DATE:   05/07/2010

TO:      Michael DuBose, Chief
         Computer Crime and Intellectual Property Section
         1301 New York Avenue - Rm. 609
         Room 609 - NYA, NW
         ATTN:

FROM:    Rena Y. Kim
         Freedom of Information Act/Privacy Act Unit

SUBJECT: Freedom of Information Act Request
         Case # 201000285F

    We have received a Freedom of Information Act Request for Criminal Division records on the following subject(s):

    "SEE ATTACHED LETTER"

Please:
    (1)   Review the attached request,
    (2)   Search all records and file systems in your section, and
    (3)   Respond in the space provided below advising me of any files located pertaining to
          the subject matter of this request.
    (4)   Please make copies of all records located and attach said copies to your response.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SECTION/OFFICE RESPONSE

Date  6/9/10

TO:   Rena Y. Kim
      Rena Y. Kim, Chief
      Freedom of Information and Privacy Act Unit
      Office of Enforcement Operations

      [ ]   We have no record of this person or matter

      [✓]   We have located records pertaining to the person or matter named above and they are
            attached.

      PLEASE RESPOND WITH COPIES OF ALL RECORDS WITHIN 30 DAYS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                    /  Name of Person Responding

# EXHIBIT 4



Criminal Division - FOIA/PA Unit    Records Search - FOIA Request

DATE: 05/07/2010

TO:     Mark Eckenwiler
        Associate Director
          for Technology
        Office of Enforcement Operations
        Room 1217 - 1301 NYA, NW

FROM:   Rena Y. Kim
        Freedom of Information Act/Privacy Act Unit

SUBJECT:   Freedom of Information Act Request
           Case # 201000285F

    We have received a Freedom of Information Act Request for Criminal Division records on the following subject(s):

        "SEE ATTACHED LETTER"

Please:
    (1)    Review the attached request,
    (2)    Search all records and file systems in your section, and
    (3)    Respond in the space provided below advising me of any files located pertaining to the subject matter of this request.
    (4)    Please make copies of all records located and attach said copies to your response.

---

                    SECTION/OFFICE RESPONSE
                                        Date  5/13/10

TO:   Rena Y. Kim
      Rena Y. Kim, Chief
      Freedom of Information and Privacy Act Unit
      Office of Enforcement Operations

      [√]   We have no record of this person or matter

      [ ]   We have located records pertaining to the person or matter named above and they are attached.

      · PLEASE RESPOND WITH COPIES OF ALL RECORDS WITHIN 30 DAYS

                                        Name of Person Responding

EXHIBIT 5



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

OCT - 6 2010

**MEMORANDUM**

**TO:**    William G. Stewart, II, Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
Room 7300, 600 E Street, N.W.
Washington, D.C. 20530-0001

**FROM:**  Rena Y. Kim, Chief
FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

**SUBJECT:**  Freedom of Information Act request - Christopher Soghoian, #201000285F

We are processing a request from the person named above. In searching our files, we have located the attached records which originated in an office for which you are responsible or which we have concluded are of primary interest to your office. We are referring these records to you for direct reply to the requester. For your information we have reviewed the Criminal Division information contained in these documents and recommend that pages 1- 299 be withheld in full pursuant to 5 U.S.C. 552(b)(2)(high 2) and (7)(E) and the Criminal Division information in pages 300 - 310 be withheld in full pursuant to 5 U.S.C. 552(b)(5). We also have attached a copy of the request letter for your assistance and have advised the requester of this referral.

Please address correspondence to us concerning this matter to: Rena Y. Kim, Chief, Freedom of Information/Privacy Act Unit, Office of Enforcement Operations, Criminal Division, Department of Justice, Washington, D.C. 20530. Attention: Rhonda Smith, (202) 514-1123.

# EXHIBIT 6



**U.S. Department of Justice**

Criminal Division

_Washington, D.C. 20530_

OCT - 6 2010

# MEMORANDUM

**TO**:        William E. Bordley, Associate General Counsel
Office of General Counsel
United States Marshals Service
Department of Justice
CS-3, 12th Floor
Washington, D.C. 20530-1000

**FROM:**     Rena Y. Kim, Chief
FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

**SUBJECT:**    Freedom of Information Act request - Christopher Soghoian, #201000285F

We are processing a request from the person named above. In searching our files, we have located the attached record which originated in an office for which you are responsible or which we have concluded is of primary interest to your office. We are referring this record to you for direct reply to the requester. We also have attached a copy of the request letter for your assistance and have advised the requester of this referral.

Please address correspondence to us concerning this matter to: Rena Y. Kim, Chief, Freedom of Information/Privacy Act Unit, Office of Enforcement Operations, Criminal Division, Department of Justice, Washington, D.C. 20530. Attention: Rhonda Smith, (202) 514-1123.

_BM 9/8/10_

_RS 9/3/10_

**FILE COPY**

# EXHIBIT 7



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C. 20530*

CRM-201000285F

**MAR 2 8 2011**

Mr. Christopher Soghoian
P.O. Box 2266
Washington, D.C. 20013

Dear Mr. Soghoian:

This is in response to your Freedom of Information Act request dated April 14, 2010, for access to records concerning certain surveillance practices created between January 1, 2007 and April 13, 2010.

Our search of Criminal Division files located approximately one hundred eighty-six (186) records within the scope of your request.

In light of our review we have determined to withhold all pages in full. We are withholding the pages pursuant to the following FOIA exemptions set forth in 5 U.S.C. 552(b):

(2)     which permits the withholding of information relating solely to the internal personnel rules and practices of an agency;

(5)     which permits the withholding of inter-agency or intra-agency memorandums or letters which reflect the predecisional, deliberative processes of the Department, and/or which consist of attorney work product prepared in anticipation of litigation;

(6)     which permits the withholding of personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7)     which permits the withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information...

(C)     could reasonably be expected to constitute an unwarranted invasion of personal privacy; and

(E)     would disclose techniques and procedures for law enforcement investigations or prosecutions, or

**FILE COPY**

would disclose guidelines for law enforcement
investigations or prosecutions if such disclosure
could reasonably be expected to risk circumvention
of the law.

We did, however, find one (1) page originated by the U.S. Marshals Service.  Pursuant to
Department practice, we have referred this record to the originating offices for their review and
direct response to you. We also found approximately four hundred eighteen (418) pages which
originated by the Office of an United States Attorney.  Pursuant to Department practice, we have
referred these pages to the Executive Office for United States Attorneys (which processes such
pages) for its review and direct response to you.

You have a right to an administrative appeal of this determination.  Department
regulations provide that such appeals must be filed within sixty (60) days of your receipt of this
letter.  28 C.F.R. 16.9.  Your appeal should be addressed to:  Office of Information Policy,
United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC
20530-0001.  Both the envelope and the letter should be clearly marked with the legend "FOIA
Appeal."  If you exercise this right and your appeal is denied, you also have the right to seek
judicial review of this action in the federal judicial district (1) in which you reside, (2) in which
you have your principal place of business, (3) in which the records denied are located, or (4) for
the District of Columbia.  If you elect to file an appeal, please include, in your letter to the Office
of Information Policy, the Criminal Division file number that appears above your name in this
letter.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit
Criminal Division

2

# EXHIBIT 8



U.S. Department of Justice

Office of Information Policy

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**APR 2 8 2011**

Mr. Christopher Soghoian
Indiana University
Center for Applied Cybersecurity Research
P.O. Box 2266
Washington, DC 20013

    Re: Request No. CRM-201000285F

Dear Mr. Soghoian:

    This is to advise you that your administrative appeal from the action of the Criminal Division was received by this Office on April 16, 2011.

    The Office of Information Policy has the responsibility of adjudicating such appeals. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number AP-2011-01749. Please mention this number in any future correspondence to this Office regarding this matter.

    We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal you may contact me at the number above.

                        Sincerely,

                        Priscilla Jones
                        Supervisory Administrative Specialist

FILE COPY

EXHIBIT 9



**U.S. Department of Justice**

Office of Information Policy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

SEP 0 6 2011


Mr. Christopher Soghoian
Indiana University
Center for Applied Cybersecurity Research          Re:   Appeal No. AP-2011-01749
Post Office Box 2266                                     Request No. CRM-201000285F
Washington, DC  20013                                   CAS:CDW

Dear Mr. Soghoian:

     You appealed from the action of the Criminal Division of the United States Department
of Justice on your request for access to records created between January 1, 2007 and April 13,
2010, regarding certain surveillance practices.

     I have been informed that you filed a lawsuit pertaining to the Criminal Division's action
in the United States District Court for the District of Columbia.  Inasmuch as this matter is now
before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R.
§ 16.9(a)(3) (2010).

                              Sincerely,

                              Janice Galli McLeod
                              Associate Director


FILE COPY