IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER SOGHOIAN,          )
                               )
                  Plaintiff,   )
        v.                     )          Civ. No. 1:11-cv-01080(ABJ)
                               )
UNITED STATES DEPARTMENT OF    )
    JUSTICE,                   )
                  Defendant.   )
_____)

## DECLARATION OF JOHN F. BOSEKER

I, John F. Boseker, declare the following to be a true and correct statement of facts:

1)      I am an Attorney Advisor in the Executive Office for United States Attorneys

("EOUSA"), United States Department of Justice ("DOJ").  I am specifically assigned to the

component of EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5

U.S.C. §552 (1988), and the Privacy Act of 1974, 5 U.S.C.§552a(1988).

2)      Due to the nature of my official duties, I am personally familiar with the referral of

records to EOUSA from the U.S. Department of Justice Criminal Division ("Criminal Division")

made in connection with a FOIA request from the above plaintiff, responded to by the Criminal

Division, which forms the basis for this litigation.

3)      My official duties include: having the authority to make final disclosure

determinations on records requested by an individual using the FOIA/PA, to assure compliance

with the provisions of the FOIA and PA and DOJ Regulation 28 CFR§16.3 et seq., and §16.40 et

seq., as well as to defend EOUSA's position in litigating challenges to EOUSA's actions.

4)      My official duties also include: acting as liaison between EOUSA and the

components within the DOJ regarding FOIA/PA requests; reviewing requests for records sought

from EOUSA and /or the 94 U.S. Attorneys offices ("USAO's"); reviewing request-related

correspondence; reviewing searches performed in response to requests; and reviewing responses

made to those requests.

     5)    The statements that follow are made on the basis of my review of EOUSA's

official files and records, my own personal knowledge, and the information I acquired in

performing my official duties.

## BACKGROUND

     6)    On October 6, 2010, EOUSA received a referral of records from the Criminal

Division, located in response to a FOIA request letter that had been received and dated April 14,

2010. **Exhibit A attached.**

     7)    By letter dated February 11, 2011, EOUSA notified Mr. Soghoian, that it had

reviewed the records referred, and determined that all 417 pages would be withheld from

disclosure by application of FOIA exemptions 5 U.S.C. §552 (b)(3) in conjunction with 18 U.S.C.

2705(b), 3123(b), 3103(a), Court Sealed documents, (b)(2), (b)(5), (b)(7)(C), and (b)(7)(E).

**Exhibit B attached.**

     8)    This same letter also notified him that he had 60 days within which to file an

administrative appeal of these actions to the Office of Information Policy ("OIP"). **Id.**.

     9)    By letter dated April 12, 2011, Mr. Soghoian notified EOUSA that he had filed via

e-mail an administrative appeal with the OIP regarding EOUSA's actions. **Exhibit C attached.**

     10)    OIP responded by letter dated April 25, 2011, notifying Mr. Soghoian of the

letter's receipt, and assignment of appeal number AP-2011-01715, and further advising that the

appeal would be reviewed in the approximate order it was received. **Exhibit D attached.**

11)   While OIP had reviewed the records and was in preparation to affirm the EOUSA determinations, with the exception of the application of Exemption (b)(2) (due to the change in the law regarding that exemption), the above-captioned lawsuit was commenced.  As a result of the commencement of this litigation, OIP sent a letter to Mr. Soghoian dated September 6, 2011, notifying him that its appeal file was being closed in accord with 28 CFR §16.9(a)3). **Exhibit E attached.**

12)   Following commencement of this litigation, EOUSA and the Criminal Division agreed that the latter would reassert possession and control and final determination of the record identified in the attached Index as Document 1. (See Declaration of Tom Roberts).  In addition, Exemption (b)(2) has been dropped and Exemption (b)(3) statute citations refined.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA
## EXEMPTION 5 U.S.C. §552(b)(3)

12)   Exemption (b)(3) prohibits disclosure of information specifically exempted release by the language of another statute.  For a statute to support  withholding  information under this exemption, the statute must either (A) require that the matters be withheld from the public without discretion, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld.  EOUSA applied this exemption in conjunction with more than one such statute as more fully discussed below and referenced in the attached Index.

13)   In order for a Federal Rule of Procedure to qualify as "a statute" it must have been affirmatively enacted into law by Congress.  Rule 6(e) has been held to meet this "statute" requirement, since it was affirmatively enacted by Congress in 1977.  That Rule prohibits the disclosure of records that pertain to the Federal Grand Jury, its integrity, and the secrecy surrounding the Jury.  EOUSA applied this exemption to one record within Document 2 in the

attached Index which was a Memorandum specifically identified by a grand jury number.

14)    EOUSA also applied this exemption in conjunction with 18 USC §3121(B)(2)(d), which states that "An order authorizing or approving the installation and use of a pen register or a trap device shall direct that 1) the order be sealed until otherwise ordered by the court; and 2) the person owning or leasing the line or other facility to which the pen register or trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the court." This statute supported application of the exemption in records in Documents 2 and 3.

15)    In addition, with the exception of the grand jury record in Document 2, all other records within that document were specifically identified as having been filed ex parte and/or under seal in their respective district courts. Under the FOIA, an agency has no discretion to release any record covered by an injunction, protective order, or court seal which prohibits disclosure. See *Robert Tyrone Morgan v. U.S. Department of Justice, 923 F.2d 195 (D.C. Cir. 1991; GTE Sylvania, Inc. V. Consumers Union, 445 U.S.375, 386-387 (1980).*

16)    EOUSA, while provided with these records, all of which are those concerning third party individuals, has no information contradicting the ex parte/under seal/grand jury status in which these records were received.

## EXEMPTION 5 U.S.C. §552(b)(5)

17)    Exemption (b)(5) protects disclosure of privileged documents, which are not ordinarily available to a party in litigation.  Principally, there are three such  privileged documents or communications protected by this exemption:  attorney work product, deliberative process, and attorney-client.

18)    EOUSA asserted this exemption to protect information pursuant to the attorney work product and deliberative process privileges to the Documents 3 and 4,  listed in the attached Index.

19)    The records or portions of records to which the attorney work product privilege was applied reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to actual and prospective criminal cases.  The records were prepared by or at the request or direction of an attorney, and made in anticipation of, during, or derivative of litigation.  The substance of the records withheld in part or in their entirety are exempt from disclosure pursuant to this privilege.

20)    In addition, these same records, in certain instances, contain deliberative process of Assistant U.S. Attorneys and Criminal Division attorneys,  and other federal agencies or components, in their consideration of possible uses of investigatory techniques in criminal actions against actual or prospective criminal defendants.  To disclose this information would reveal pre-decisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies.  Disclosure would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making.  The attorney work product and deliberative process are so interwoven as to make it all, in essence, attorney work product.

## EXEMPTION 5 U.S.C. §552(b)(7)(C)

21)     Exemption (b)(7)(C) protects the release of records or information compiled for law enforcement purposes if such release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The information at issue in this case, to which this exemption has been applied,  was compiled for law enforcement purposes concerning the prosecution of criminal defendants (unnamed herein), as well as the names of federal attorneys and agents, involved in the legal analyses contained within the documents identified in the attached Index.

22)     This exemption was applied to withhold the identities of and personal information about third party individuals, the release of which could subject such persons to an unwarranted invasion of their personal privacy.  Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them.  It could also lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case.  In short, disclosure would be detrimental to the persons protected.

23)     This exemption was also applied to withhold the identities of individuals such as special federal agents, other government employees, and local law enforcement personnel all of whom participated in the investigation and prosecution of this case.  Individual duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize, law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm.  These persons have protected privacy interests in the conduct of law enforcement investigations and legal analyses.

24)     No authorization or consents to release otherwise privacy protected materials regarding any of the third party individuals, to whom this exemption was applied, was provided by Mr. Soghoian.

25)     EOUSA asserts in this regard, that to the extent that the scope of Mr. Soghoian's request (Items 1-3) is concerned with policies and practices, there has been no request made for the records of any third party individual, and to that extent, where applied, these same records are arguably not responsive to the request.

## EXEMPTION 5 U.S.C §(b)(7)(E)

26)     Exemption (b)(7)(E) permits withholding of records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. If such procedures were to be released, it would hamper the efforts of the government to carry out its responsibilities and make it easier for those so inclined to violate the law without the same likelihood of being held accountable for their actions. This is particularly true with respect to any future efforts for apprehending the same types of crimes.

27)     EOUSA applied this exemption to protect this type of information in Documents 3 and 4 in the attached Index.

## SEGREGABILITY

28)     Each document was evaluated to determine if any information could be segregated and released. The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document, breaching a privilege, exposing critical investigatory techniques, without identifying a third party individual, or violating a court order sealing the third party records or Federal Rule of Criminal Procedure.

29)     Each step in the handling of the referred documents, has been entirely consistent with the EOUSA and the USAO's procedures adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ⎯January 30⎯, 2012.

JOHN F. BOSEKER

Senior Attorney Advisor, EOUSA

| BOX/ DOC | PAGES | DOCUMENT DESCRIPTION | EXEMPT/ STATUS | JUSTIFICATION |
|---|---|---|---|---|
| | | **FOIA NO.** 10-3692-R CHRISTOPHER SOGHOIAN | | |
| 1 | 300 | "Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations" | | Publication of OLE Litigation Series, manual produced in conjunction with Computer Crimes and Intellectual Property Section, Criminal Division. This document was originally withheld in full, but subsequent to this referral and commencement of this litigation, Criminal Division reasserted possession, control, and final disposition. (See Declaration of Tom Roberts). |
| 2 | 86 | "In the Matter of Application and Order" re: Pen Register etc.<br><br>Ex Parte/Filed Under Seal/Grand Jury | b3/18 USC 3121(B)(2) (d)<br><br>UNDER SEAL FedRCrPo 6e<br><br>b7C<br><br>WIF Not Segregable | This category of records consists entirely of specific third party individual criminal case prosecution filings in the U.S. District Courts of Eastern District of New York, Maryland, and Northern District of Illinois. All are Applications for Orders & Orders, authorizing the use of pen registers, trap and trace devices, all filed ex parte and under seal pursuant to the afore-referenced statutes, authorizing the installation and use of a pen register in particular criminal cases on specified third party individual targets, except for one Memorandum of Law filed in a federal grand jury matter concerning the same subject matter.<br><br>All withheld in their entirety and not subject to segregation pursuant to the afore-referenced statutes and Exemption (b)(3) and as sealed records prohibited from disclosure. Moreover, all are the records of third party individuals who have neither been specifically requested nor consented to disclosure, and are subject to protection by application of Exemption 7C, which protects third party individuals from unwarranted invasion of personal privacy. |

| 3 | 21 | E-mail from USMS Legal Advisor to other USDOJ Attorneys with attachments (undated) | b5<br>b3/<br>  18 USC<br><br>3123(B)(2)<br>        (d)<br>b7E<br><br>WIF<br>Not<br>Segregable | Intra-agency e-mail from Legal Advisor rendering legal opinion and recommendations, soliciting responses from recipients, regarding the use of draft models attached respecting sealed applications, affidavit, and orders for use in the types of cases identified in Document 2 above.<br><br>All withheld in their entirety by application of Exemption b(5) and (b)(3) in conjunction with the afore-referenced statutes, indicating as per Document 2, that all would be filed Under Seal.  In addition, these drafts contain portions detailing types of investigative techniques protected by Exemption (b)(7)(E), to the extent that those portions, would if disclosed, enable circumvention of the law. |
| 4 | 9 | E-mail communications between various AUSAs and USAOs and Criminal Division attorneys (9/09-12/09) | b5<br>b7C<br>b7E<br><br>WIF<br>Not<br>Segregable | Intra-agency communications between AUSAs in various USAOs and Criminal Division attorneys discussing legal issues and actual third party individual criminal cases involving "cell site" data.  Substance of exchanges concern legal analyses, alternative theories, and legal views both theoretical and as applied and recommendations concerning.  (There are necessarily duplicate texts within the chain e-mails.)<br><br>All withheld by application of Exemption (b)(5) to privileged communications, (b)(7)(C) to the names of federal attorneys involved in the communications, and (b)(7)(E) to the particulars respecting the law enforcement techniques discussed and assessed within. |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



**U.S. Department of Justice**

Criminal Division

DOJ/EOUSA/FOIA STAFF

2010 OCT -6  PM 2: 28

*Washington, D.C.  20530*

OCT - 6 2010

# MEMORANDUM

**TO:**  William G. Stewart, II, Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
Room 7300, 600 E Street, N.W.
Washington, D.C.  20530-0001

**FROM:**  Rena Y. Kim, Chief
FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

**SUBJECT:**  Freedom of Information Act request - Christopher Soghoian, #201000285F

We are processing a request from the person named above.  In searching our files, we have located the attached records which originated in an office for which you are responsible or which we have concluded are of primary interest to your office.  We are referring these records to you for direct reply to the requester.  For your information we have reviewed the Criminal Division information contained in these documents and recommend that pages 1- 299 be withheld in full pursuant to 5 U.S.C. 552(b)(2)(high 2) and (7)(E) and the Criminal Division information in pages 300 - 310 be withheld in full pursuant to 5 U.S.C. 552(b)(5).   We also have attached a copy of the request letter for your assistance and have advised the requester of this referral.

Please address correspondence to us concerning this matter to: Rena Y. Kim, Chief, Freedom of Information/Privacy Act Unit, Office of Enforcement Operations, Criminal Division, Department of Justice, Washington, D.C.  20530. Attention: Rhonda Smith, (202) 514-1123.



GOVERNMENT
EXHIBIT
A
EoUSA

Christopher Soghoian
P.O. Box 2266
Washington DC, 20013
617-308-6368

Rena Y. Kim
Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

April 14, 2010

Sent via fax to: (202) 514 6117

**FOIA REQUEST**
**Fee benefit requested**
**Fee waiver requested**
**Expedited processing requested**

Dear FOIA Officer:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552.

I am seeking information regarding several surveillance practices.

1. Any memos, email communications, reports, legal opinions, or other documents related to the government's acquisition (either compelled, or voluntary disclosure by the carrier) of cellular location information (including but not limited to Call Detail Records) regarding individuals who are roaming, and thus not using their own carrier's network, and are instead using another wireless telecommunications carrier to which the individual is not a subscriber.
2. Any memos, email communications, reports, legal opinions, or other documents related to government requests for location of called parties in "hybrid"[1] orders – e.g. requests

---

[1] Law enforcement agents use "hybrid" orders for cellular location information. Hybrid orders seek to determine a suspect's past and future location based on non-content data transmitted by the suspect's cellular phone. The government has engaged in this type of surveillance by invoking a combination of authorities under the Pen Register Act and the Stored Communications Act. *See In re United States for Order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435, 443-49 [S.D.N.Y. 2005] *see also In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) (denying government request under "hybrid theory"), available at:
http://www.txs.uscourts.gov/district/judges/sws/05MJ557_Cell_site_opinion.pdf.

that a carrier provide the government with subscriber and toll records for each number called by the target including cell site or location information associated with each call for a particular period.

3. Any memos, email communications, reports, legal opinions, or other documents related to government agents requesting and obtaining non-content header information (such as "to" and "from" addresses) associated with individuals' email communications that have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and not via a 18 USC 2703(d) order). I also request any information regarding refusals by some Internet Service Providers to deliver such non-content header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs.

The information I am seeking spans the entire Criminal Division of the Department of Justice, although I am particularly interested in any information held by the Office of Enforcement Operations, the Computer Crime & Intellectual Property Section. The scope of this request is for anything relevant created between January 1 2007 and April 13 2010.

**News Media Status / Fee Waiver**

As a representative of the news media I am only required to pay for the direct cost of duplication after the first 100 pages.

Since September 2006, I have written the *slight paranoia*[2] blog, which focuses on information security and privacy related issues. Furthermore, from September 2007-March 2009, I was paid to write the *Surveillance State*[3] blog for CNET Networks/CBS Interactive, discussing similar topics.

My blog features a significant amount of in-depth original investigative reporting, and I have broken a number of major stories that later spread throughout the national media. Examples of this include:

In January 2009, I was the first to report that the Obama White House had specifically excluded YouTube from strict federal privacy rules.[4] This story was later picked up by other media outlets[5], and then drew the attention of privacy groups such as the Electronic Frontier Foundation.[6] Less than a week later, the White House revised its privacy policy to remove the YouTube specific language.[7]

---

[2] See: http://paranoia.dubfire.net
[3] See: http://news.cnet.com/surveillance-state/
[4] See: http://news.cnet.com/8301-13739_3-10147726-46.html
[5] See: http://www.readwriteweb.com/archives/white_house_continues_to_give.php and http://www.computerworld.com/s/article/9126954/Cookie_use_in_YouTube_videos_on_WhiteHouse.gov_prompts_privacy_concerns.
[6] See: http://www.eff.org/files/EFF_letter_craig.pdf
[7] See: http://news.cnet.com/8301-13739_3-10150534-46.html

In September 2008, Google announced that it would be taking steps to anonymize the data relating to search engine queries submitted by its millions of users.[8] Major news media sites such as the New York Times and Washington Post soon wrote stories describing Google's move as "illustrating how seriously [Google takes the issue of] data anonymization."[9] In the days that followed, I contacted Google to get more details of the policy, and discovered that it in fact provided little to no real privacy protection to end users. I wrote a story at CNET describing Google's policy as "propaganda", and explained how little the company was actually doing to protect consumers.[10] Soon, other media outlets began to turn on Google. One British news site called it "Google Privacy Theatre",[11] while an American technology news organization called it a "farce."[12] A prominent US technology journalist wrote that "the announcement was designed to make headlines and appease regulators while doing nothing to release Google's stranglehold on your data."[13] With one single blog post, I turned the media's coverage of Google's new policy from glowing praise, to outright condemnation.

In February 2007, I discovered several security flaws in the TSA Traveler Identity Verification Program web site, which exposed the private information of citizens to theft. I quickly wrote about these on my blog.[14] Others in the media soon picked up the story[15], forcing TSA to take the site offline in order to fix the flaws. One year later, the House Committee for Oversight and Government Reform conducted an investigation of TSA's web security practices, leading to the revelation that the owner of the contracting company which produced and maintained the TSA site was a high school friend and drinking buddy of the TSA manager in charge of the contract.[16]

During peak times, my blog has been viewed by over 200,000 individual persons in a single month, and I continue to be widely cited by other media outlets.

I recognize that I am not a member of the traditional news media or an accredited journalist. However, as you likely are aware, that business model is undergoing rapid change, and bloggers are increasingly playing a leading role in the discovery and dissemination of news. As such, I ask that you grant me a "representative of the news media" fee waiver.

I also believe that I should not be charged search or review fees for this request because I qualify as a researcher at an "educational institution" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(4).

---

[8] http://googleblog.blogspot.com/2008/09/another-step-to-protect-user-privacy.html
[9] http://www.washingtonpost.com/wp-dyn/content/article/2008/09/08/AR2008090802472.html and
http://bits.blogs.nytimes.com/2008/09/08/google-tightens-data-retention-policy-again/
[10] http://news.cnet.com/8301-13739_3-10038963-46.html
[11] http://www.theregister.co.uk/2008/09/12/google_ip_anonymization/
[12] http://blogs.zdnet.com/Google/?p=1139
[13] http://www.infoworld.com/d/windows/smoke-mirrors-and-googles-privacy-policies-532
[14] http://paranoia.dubfire.net/2007/02/tsa-has-outsourced-tsa-traveler.html
[15] http://www.wired.com/threatlevel/2007/02/homeland_securi/
[16] http://www.wired.com/threatlevel/2008/01/cronyism-led-to/ and
http://oversight.house.gov/documents/20080111092648.pdf

I am currently a Ph.D. Candidate at Indiana University. My Ph.D. research primarily relates to computer security and privacy, with a particular focus on the relationship between service providers and the government. See for example, my recent academic article, which has been published in a leading technology law journal.[17]

As an academic researcher, I am widely recognized by my peers and the media as an expert in privacy related issues. One news outlet recently described me as "among the most influential researchers today when it comes to online privacy and advertising." [18]

## Expedited Processing

Please provide expedited processing of this request which concerns a matter of urgency. Both the House and Senate are currently considering overhauling the Electronic Communications Privacy Act, which is the primary statute that protects the privacy of Americans' communications from the government.

For example, in announcing the House Judiciary Committee's plan to hold hearings, Rep. Bobby Scott stated that:

> With the great advances in communications technology we have seen in recent years, and the unprecedented extension of government powers to peer into traditionally private communications, we need to examine whether the lines are appropriately drawn to reflect the level of constitutional protections and liberties citizens expect in their everyday communications.[19]

In addition to interest from Members of Congress, there has also been significant media interest in this issue. In the past two weeks, there have been more than one hundred news articles about the industry/public interest coalition's call for ECPA reform.[20]

The methods by which law enforcement agencies are able to obtain individuals' private information, including location data is thus currently a matter of significant public interest, and thus the public has an urgent need for accurate information about this issue.

As such, I ask that you expedite my request for this information.

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief.

---

[17] Caught in the Cloud: Privacy, Encryption, and Government Back Doors in the Web 2.0 Era, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1421553

[18] http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=111800

[19] http://judiciary.house.gov/news/100330.html

[20] See: http://www.mercurynews.com/breaking-news/ci_14791086 http://news.bbc.co.uk/2/hi/technology/8595775.stm and http://www.fastcompany.com/1602463/digital-due-process-coalition-including-microsoft-google-and-more-call-for-tougher-online-pr

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Christopher Soghoian

Christopher Soghoian
P.O. Box 2266
Washington DC, 20013
617-308-6368

Rena Y. Kim
Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

April 14, 2010

Sent via fax to: (202) 514 6117

**FOIA REQUEST**
**Fee benefit requested**
**Fee waiver requested**
**Expedited processing requested**

Dear FOIA Officer:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552.

I am seeking information regarding several surveillance practices.

1. Any memos, email communications, reports, legal opinions, or other documents related to the government's acquisition (either compelled, or voluntary disclosure by the carrier) of cellular location information (including but not limited to Call Detail Records) regarding individuals who are roaming, and thus not using their own carrier's network, and are instead using another wireless telecommunications carrier to which the individual is not a subscriber.
2. Any memos, email communications, reports, legal opinions, or other documents related to government requests for location of called parties in "hybrid"[1] orders – e.g. requests

---

[1] Law enforcement agents use "hybrid" orders for cellular location information. Hybrid orders seek to determine a suspect's past and future location based on non-content data transmitted by the suspect's cellular phone. The government has engaged in this type of surveillance by invoking a combination of authorities under the Pen Register Act and the Stored Communications Act. *See In re United States for Order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435, 443-49 [S.D.N.Y. 2005] *see also In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) (denying government request under "hybrid theory"), available at:

http://www.txs.uscourts.gov/district/judges/sws/05MJ557_Cell_site_opinion.pdf.

that a carrier provide the government with subscriber and toll records for each number
called by the target including cell site or location information associated with each call
for a particular period.

3. Any memos, email communications, reports, legal opinions, or other documents related
   to government agents requesting and obtaining non-content header information (such
   as "to" and "from" addresses) associated with individuals' email communications that
   have been opened, or are over 180 days old, based upon a showing of relevance to an
   ongoing investigation (and not via a 18 USC 2703(d) order). I also request any
   information regarding refusals by some Internet Service Providers to deliver such non-
   content header information without a 2703(d) order, even for communications over 180
   days old, and any information regarding DOJ's response to the refusal by the ISPs.

The information I am seeking spans the entire Criminal Division of the Department of Justice,
although I am particularly interested in any information held by the Office of Enforcement
Operations, the Computer Crime & Intellectual Property Section. The scope of this request is for
anything relevant created between January 1 2007 and April 13 2010.

**News Media Status / Fee Waiver**

As a representative of the news media I am only required to pay for the direct cost of
duplication after the first 100 pages.

Since September 2006, I have written the *slight paranoia*[2] blog, which focuses on information
security and privacy related issues. Furthermore, from September 2007-March 2009, I was paid
to write the *Surveillance State*[3] blog for CNET Networks/CBS Interactive, discussing similar
topics.

My blog features a significant amount of in-depth original investigative reporting, and I have
broken a number of major stories that later spread throughout the national media.  Examples
of this include:

In January 2009, I was the first to report that the Obama White House had specifically excluded
YouTube from strict federal privacy rules.[4] This story was later picked up by other media
outlets[5], and then drew the attention of privacy groups such as the Electronic Frontier
Foundation.[6] Less than a week later, the White House revised its privacy policy to remove the
YouTube specific language.[7]

---

[2] See: http://paranoia.dubfire.net
[3] See: http://news.cnet.com/surveillance-state/
[4] See: http://news.cnet.com/8301-13739_3-10147726-46.html
[5] See: http://www.readwriteweb.com/archives/white_house_continues_to_give.php and
http://www.computerworld.com/s/article/9126954/Cookie_use_in_YouTube_videos_on_WhiteHouse.gov_prompts_privacy_c
oncerns.
[6] See: http://www.eff.org/files/EFF_letter_craig.pdf
[7] See: http://news.cnet.com/8301-13739_3-10150534-46.html

In September 2008, Google announced that it would be taking steps to anonymize the data relating to search engine queries submitted by its millions of users.[8] Major news media sites such as the New York Times and Washington Post soon wrote stories describing Google's move as a "illustrating how seriously [Google takes the issue of] data anonymization."[9] In the days that followed, I contacted Google to get more details of the policy, and discovered that it in fact provided little to no real privacy protection to end users. I wrote a story at CNET describing Google's policy as "propaganda", and explained how little the company was actually doing to protect consumers.[10] Soon, other media outlets began to turn on Google. One British news site called it "Google Privacy Theatre",[11] while an American technology news organization called it a "farce."[12] A prominent US technology journalist wrote that "the announcement was designed to make headlines and appease regulators while doing nothing to release Google's stranglehold on your data."[13] With one single blog post, I turned the media's coverage of Google's new policy from glowing praise, to outright condemnation.

In February 2007, I discovered several security flaws in the TSA Traveler Identity Verification Program web site, which exposed the private information of citizens to theft. I quickly wrote about these on my blog.[14] Others in the media soon picked up the story[15], forcing TSA to take the site offline in order to fix the flaws. One year later, the House Committee for Oversight and Government Reform conducted an investigation of TSA's web security practices, leading to the revelation that the owner of the contracting company which produced and maintained the TSA site was a high school friend and drinking buddy of the TSA manager in charge of the contract.[16]

During peak times, my blog has been viewed by over 200,000 individual persons in a single month, and I continue to be widely cited by other media outlets.

I recognize that I am not a member of the traditional news media or an accredited journalist. However, as you likely are aware, that business model is undergoing rapid change, and bloggers are increasingly playing a leading role in the discovery and dissemination of news. As such, I ask that you grant me a "representative of the news media" fee waiver.

I also believe that I should not be charged search or review fees for this request because I qualify as a researcher at an "educational institution" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(4).

---

[8] http://googleblog.blogspot.com/2008/09/another-step-to-protect-user-privacy.html

[9] http://www.washingtonpost.com/wp-dyn/content/article/2008/09/08/AR2008090802472.html and

http://bits.blogs.nytimes.com/2008/09/09/google-tightens-data-retention-policy-again/

[10] http://news.cnet.com/8301-13739_3-10038963-46.html

[11] http://www.theregister.co.uk/2008/09/12/google_ip_anonymization/

[12] http://blogs.zdnet.com/Google/?p=1139

[13] http://www.infoworld.com/d/windows/smoke-mirrors-and-googles-privacy-policies-532

[14] http://paranoia.dubfire.net/2007/02/tsa-has-outsourced-tsa-traveler.html

[15] http://www.wired.com/threatlevel/2007/02/homeland_securi/

[16] http://www.wired.com/threatlevel/2008/01/cronyism-led-to/ and

http://oversight.house.gov/documents/20080111092648.pdf

I am currently a Ph.D. Candidate at Indiana University. My Ph.D. research primarily relates to computer security and privacy, with a particular focus on the relationship between service providers and the government. See for example, my recent academic article, which has been published in a leading technology law journal.[17]

As an academic researcher, I am widely recognized by my peers and the media as an expert in privacy related issues. One news outlet recently described me as "among the most influential researchers today when it comes to online privacy and advertising." [18]

### Expedited Processing

Please provide expedited processing of this request which concerns a matter of urgency. Both the House and Senate are currently considering overhauling the Electronic Communications Privacy Act, which is the primary statute that protects the privacy of Americans' communications from the government.

For example, in announcing the House Judiciary Committee's plan to hold hearings, Rep. Bobby Scott stated that:

> With the great advances in communications technology we have seen in recent years, and the unprecedented extension of government powers to peer into traditionally private communications, we need to examine whether the lines are appropriately drawn to reflect the level of constitutional protections and liberties citizens expect in their everyday communications.[19]

In addition to interest from Members of Congress, there has also been significant media interest in this issue. In the past two weeks, there have been more than one hundred news articles about the industry/public interest coalition's call for ECPA reform.[20]

The methods by which law enforcement agencies are able to obtain individuals' private information, including location data is thus currently a matter of significant public interest, and thus the public has an urgent need for accurate information about this issue.

As such, I ask that you expedite my request for this information.

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief.

---

[17] Caught in the Cloud: Privacy, Encryption, and Government Back Doors in the Web 2.0 Era, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1421553

[18] http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=111800

[19] http://judiciary.house.gov/news/100330.html

[20] See: http://www.mercurynews.com/breaking-news/ci_14791086
http://news.bbc.co.uk/2/hi/technology/8595775.stm and http://www.fastcompany.com/1602463/digital-due-process-coalition-including-microsoft-google-and-more-call-for-tougher-online-pr

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Christopher Soghoian



U.S. Departmer.    :Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C.  20530
202-616-6757   Fax 202-616-6478

---

Requester: Christopher Soghoian

Request Number: 10-3692-R

Government Component that referred material: Department of Justice, Criminal Division

Dear Requester:

This is in reply to your Freedom of Information Act/Privacy Act request of April 14, 2010. Records were referred to us by the government component above for direct response to you.

The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a | |
|---|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [ X ] (j)(2) | 1 1 FEB 2011 |
| [ X ] (b)(2) | [ X ] (b)(5) | [ X ] (b)(7)(C) | [   ] (k)(2) | |
| [ X ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) | |
| Sealed | [   ] (b)(7)(A) | [ X ] (b)(7)(E) | [   ] _____ | |
| 18 USC 2705 (b), 3123(d) &3103(b) | [   ] (b)(7)(F) | | | |

We have reviewed approximately     417      page(s) of material:

_____ page(s) are being released in full (RIF);
_____ page(s) are being released in part (RIP);
   417    page(s) are withheld in full (WIF) and
_____ pages were duplicate copies of material already processed.

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

GOVERNMENT
EXHIBIT
B
EoasA

Form No. 024 - 2/06

AP- 2011- 01715

**Work, Anne D (SMO)**   *app*

CW

FOIA
@
EOUSA

| | |
|---|---|
| **From:** | Christopher Soghoian [chris@soghoian.net] |
| **Sent:** | Tuesday, April 12, 2011 1:36 PM |
| **To:** | DOJ.OIP.Administrative Appeal (SMO) |
| **Subject:** | FOIA Appeal to Request 10-3692-R |
| **Attachments:** | surveillance-practices-appeal-plus-attachments.pdf |

Hello,

Please see the attached FOIA Appeal in response to a rejection of FOIA Request 10-3692-R from the
Executive Office of US Attorneys, dated Feb 11, 2011.

Thank you

Christopher

RECEIVED

**APR 1 2 2011**

Office of Information Policy



Feb 11
March
April

17
31
12
6



GOVERNMENT
EXHIBIT
C
EOUSA

Christopher Soghoian
Graduate Fellow
Center for Applied Cybersecurity Research, Indiana University
PO Box 2266, Washington DC, 20013
Phone: 617-308-6368
Email: chris@soghoian.net

William G. Stewart II
Assistant Director
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue, Suite 11050
Washington, DC, 20530-0001

**April 12, 2011**
**BY EMAIL TO: doj.oip.administrative.appeal@usdoj.gov**
**RE: Freedom of Information Act Appeal to Request <u>10-3692-R</u>**

Dear Mr. Stewart:

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. §
552. I appeal the initial determination rendered by the Executive Office for United States
Attorneys in the Department of Justice ("DOJ") on February 11, 2011 (attached hereto as
Attachment A) in response to a request for records I submitted to the Criminal Division within
DOJ on April 14, 2009 (also attached hereto as Attachment B).

In my request to DOJ, I sought copies of any records, including memoranda, policies,
procedures, legal opinions and information regarding several surveillance practices. I sought:

1. Any memos, email communications, reports, legal opinions, or other documents related
   to the government's acquisition (either compelled, or voluntary disclosure by the carrier)
   of cellular location information (including but not limited to Call Detail Records)
   regarding individuals who are roaming, and thus not using their own carrier's network,
   and are instead using another wireless telecommunications carrier to which the individual
   is not a subscriber.
2. Any memos, email communications, reports, legal opinions, or other documents related
   to government requests for location of called parties in "hybrid" orders – e.g. requests
   that a carrier provide the government with subscriber and toll records for each number
   called by the target including cell site or location information associated with each call
   for a particular period.
3. Any memos, email communications, reports, legal opinions, or other documents related
   to government agents requesting and obtaining non-content header information (such
   as "to" and "from" addresses) associated with individuals' email communications that

have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and not via a 18 USC 2703(d) order). I also request any information regarding refusals by some Internet Service Providers to deliver such non-content header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs.

In its determination letter, DOJ acknowledged that 417 pages of documents responsive to my request were located, all of which were completely withheld under 5 U.S.C. § 552a(j)(2), 552(b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(E), 18 U.S.C. §2705(b), 3123(d) and 3103(b). An addendum to the letter also indicated that some of the records were covered by an injunction, protective order, or court seal that prohibits disclosure.

I appeal this determination on the grounds that DOJ has applied these exemptions more broadly than the FOIA permits.

DOJ did not provide any explanation for withholding the materials beyond the conclusory assertion that they were exempt from disclosure under various statutory exemptions. Nor did DOJ explain whether it believe that *all portions* of the documents were exempt from disclosure on all of the various grounds, or whether some information was exempt under some grounds but not others. DOJ merely stated in a sweeping and undifferentiated fashion that the exemption provisions applied to the documents. These failures have made it extremely difficult for me to formulate this appeal.

DOJ's failure to state the reasons for its decision constitutes an independent ground for overturning it. *See Shermico Indus., Inc. v. Sec. of the Air Force*, 452 F. Supp. 306, 317 n.7 (N.D.Tex. 1978), *rev'd on other grounds*, 613 F.2d 1314 (5th Cir. 1980) ("A person cannot effectively appeal a decision about the releasability of documents ... if he is not informed of ... why those decisions were made."); *see also Friends of the Coast Fork v. U.S. Dep't of Interior*, 110 F.3d 53,55 (9th Cir. 1997) ("[T]he government's denial letter must be reasonably calculated to put the requester on notice as to the deficiencies in the requester's case.").

Moreover, DOJ did not explain why the documents must be withheld in their entirety nor why there were no segregable information in the documents that could be released. See 5 U.S.C §552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."); *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) ("an agency cannot justify withholding an entire document simply by showing that it contains some exempt material"); *Arieff v. Dep't of Navy*, 712 F.2d 1462, 1466 (D.C. Cir. 1983) ("[T]he exemptions of the FOIA do not apply wholesale. An item of exempt information does not insulate from disclosure the entire file in which it is contained ... ").

While I it is possible that the requested documents may include some material legitimately exempt from disclosure under the law, it is implausible that *not a single word* contained within 417 pages responsive to my request can be released to the public under the FOIA. Therefore, it is highly likely that DOJ has withheld more information than the FOIA permits. *See Campbell v. HHS*, 682 F.2d 256, 261 (D.C. Cir. 1982) (requiring segregation of non-exempt material).

I assert that DOJ has applied its claimed exemption too broadly, despite the fact that the law favors disclosure and requires that exemptions be narrowly applied. *See, e.g., Department of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) ("consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass"); *FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed").

Furthermore, I do not agree that the requested materials are exempt from disclosure. I request that if any portions of the requested documents are withheld, the Special Counselor should describe the deleted material in detail and specify the statutory basis for the denial as well as your reasons for believing that the alleged statutory justification applies in this instance. *See, e.g., Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).* Additionally, I ask that those portions of the documents which may indeed be properly exempted from disclosure should be released pursuant to the Special Counselor's powers of discretionary release under 36 C.F.R. § 200.11(b), and 7 C.F.R. § 1.17(b).

It is by now well-established law, that a plaintiff in a FOIA case is entitled to an index of the documents and/or portions of documents that have been withheld by the defendant agency. *See, e.g., Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).* Moreover, the description of the withheld material must be "sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *See, e.g., Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Dir. 1979).* Of course we are not in the litigation context yet, but to help avoid such an eventuality, it would certainly be helpful if DOJ were to provide such an index if it were to decide to continue withholding of any portions of the requested documents.

As I said in my initial request, as a blogger and academic privacy researcher, I am primarily engaged in disseminating information and have established a solid track record for doing so. Just last year, some of my research was cited by Chief Judge Alex Kozinski in *US v. Pineda-Moreno*, 617 F. 3d 1120 - Court of Appeals, 9th Circuit 2010.

The public has an urgent need for information about the surveillance practices particularly given the fact that Congress is currently considering the possibility of reforming the two-decade old Electronic Communications Privacy Act, which governs many forms of electronic surveillance. As such, I ask that the Special Counselor consider my appeal on the same expedited basis that I sought in my original request, reverse the denial of my FOIA request, and waive all associated fees.

Thank you for your consideration of this appeal. As the FOIA provides, I will anticipate your determination on this appeal within twenty (20) working days. Should you have any questions about this appeal, please feel free to call me at (617) 308-6368.

Sincerely,

Christopher Soghoian



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester: Christopher Soghoian

Request Number: 10-3692-R                                          11 FEB 2011

Government Component that referred material: Department of Justice, Criminal Division

Dear Requester:

     This is in reply to your Freedom of Information Act/Privacy Act request of April 14, 2010. Records were referred to us by the government component above for direct response to you.

     The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [ X ] (j)(2) |
| [ X ] (b)(2) | [ X ] (b)(5) | [ X ] (b)(7)(C) | [   ] (k)(2) |
| [ X ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) |
| Sealed | [   ] (b)(7)(A) | [ X ] (b)(7)(E) | [   ] _____ |
| 18 USC 2705 (b), 3123(d) &3103(b) | [   ] (b)(7)(F) | | |

     We have reviewed approximately ____417____ page(s) of material:

_____ page(s) are being released in full (RIF);

_____ page(s) are being released in part (RIP);

__417__ page(s) are withheld in full (WIF) and

_____ pages were duplicate copies of material already processed.

     This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

Form No. 024 - 2/06

# ADDENDUM TO THE EXPLANATION OF EXEMPTION SHEET

☐   Rule 6(e) of the Federal Rules of Criminal Procedure pertains to the Federal Grand Jury, its integrity and the secrecy surrounding the Jury.

☒   Under the Freedom of Information Act, an agency has no discretion to release any record covered by an injunction, protective order, or court seal which prohibits disclosure. See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 386-387 (1980); See also Robert Tyrone Morgan v. U.S. Dept. of Justice, 923 F.2d 195 (D.C. Cir. 1991).

Christopher Soghoian
P.O. Box 2266
Washington DC, 20013
617-308-6368

Rena Y. Kim
Chief, FOIA/PA Unit
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

April 14, 2010

Sent via fax to: (202) 514 6117

**FOIA REQUEST**
**Fee benefit requested**
**Fee waiver requested**
**Expedited processing requested**

Dear FOIA Officer:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552.

I am seeking information regarding several surveillance practices.

1. Any memos, email communications, reports, legal opinions, or other documents related
   to the government's acquisition (either compelled, or voluntary disclosure by the
   carrier) of cellular location information (including but not limited to Call Detail Records)
   regarding individuals who are roaming, and thus not using their own carrier's network,
   and are instead using another wireless telecommunications carrier to which the
   individual is not a subscriber.
2. Any memos, email communications, reports, legal opinions, or other documents related
   to government requests for location of called parties in "hybrid"[1] orders – e.g. requests

---

[1] Law enforcement agents use "hybrid" orders for cellular location information. Hybrid orders seek to determine a
suspect's past and future location based on non-content data transmitted by the suspect's cellular phone. The
government has engaged in this type of surveillance by invoking a combination of authorities under the Pen
Register Act and the Stored Communications Act. *See In re United States for Order for Disclosure of
Telecommunications Records*, 405 F. Supp. 2d 435, 443-49 (S.D.N.Y. 2005) *see also In re Application for Pen Register
and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747 (S.D. Tex. 2005) (denying government
request under "hybrid theory"), available at:
http://www.txs.uscourts.gov/district/judges/sws/05MJ557_Cell_site_opinion.pdf.

that a carrier provide the government with subscriber and toll records for each number called by the target including cell site or location information associated with each call for a particular period.

3.  Any memos, email communications, reports, legal opinions, or other documents related to government agents requesting and obtaining non-content header information (such as "to" and "from" addresses) associated with individuals' email communications that have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and **not** via a 18 USC 2703(d) order). I also request any information regarding refusals by some Internet Service Providers to deliver such non-content header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs.

The information I am seeking spans the entire Criminal Division of the Department of Justice, although I am particularly interested in any information held by the Office of Enforcement Operations, the Computer Crime & Intellectual Property Section. The scope of this request is for anything relevant created between January 1 2007 and April 13 2010.

**News Media Status / Fee Waiver**

As a representative of the news media I am only required to pay for the direct cost of duplication after the first 100 pages.

Since September 2006, I have written the *slight paranoia*[2] blog, which focuses on information security and privacy related issues. Furthermore, from September 2007-March 2009, I was paid to write the *Surveillance State*[3] blog for CNET Networks/CBS Interactive, discussing similar topics.

My blog features a significant amount of in-depth original investigative reporting, and I have broken a number of major stories that later spread throughout the national media.  Examples of this include:

In January 2009, I was the first to report that the Obama White House had specifically excluded YouTube from strict federal privacy rules.[4] This story was later picked up by other media outlets[5], and then drew the attention of privacy groups such as the Electronic Frontier Foundation.[6] Less than a week later, the White House revised its privacy policy to remove the YouTube specific language.[7]

---

[2] See: http://paranoia.dubfire.net
[3] See: http://news.cnet.com/surveillance-state/
[4] See: http://news.cnet.com/8301-13739_3-10147726-46.html
[5] See: http://www.readwriteweb.com/archives/white_house_continues_to_give.php and http://www.computerworld.com/s/article/9126954/Cookie_use_in_YouTube_videos_on_WhiteHouse.gov_prompts_privacy_concerns.
[6] See: http://www.eff.org/files/EFF_letter_craig.pdf
[7] See: http://news.cnet.com/8301-13739_3-10150534-46.html

In September 2008, Google announced that it would be taking steps to anonymize the data relating to search engine queries submitted by its millions of users.[8] Major news media sites such as the New York Times and Washington Post soon wrote stories describing Google's move as a "illustrating how seriously [Google takes the issue of] data anonymization."[9] In the days that followed, I contacted Google to get more details of the policy, and discovered that it in fact provided little to no real privacy protection to end users. I wrote a story at CNET describing Google's policy as "propaganda", and explained how little the company was actually doing to protect consumers.[10] Soon, other media outlets began to turn on Google. One British news site called it "Google Privacy Theatre",[11] while an American technology news organization called it a "farce."[12] A prominent US technology journalist wrote that "the announcement was designed to make headlines and appease regulators while doing nothing to release Google's stranglehold on your data."[13] With one single blog post, I turned the media's coverage of Google's new policy from glowing praise, to outright condemnation.

In February 2007, I discovered several security flaws in the TSA Traveler Identity Verification Program web site, which exposed the private information of citizens to theft. I quickly wrote about these on my blog.[14] Others in the media soon picked up the story[15], forcing TSA to take the site offline in order to fix the flaws. One year later, the House Committee for Oversight and Government Reform conducted an investigation of TSA's web security practices, leading to the revelation that the owner of the contracting company which produced and maintained the TSA site was a high school friend and drinking buddy of the TSA manager in charge of the contract.[16]

During peak times, my blog has been viewed by over 200,000 individual persons in a single month, and I continue to be widely cited by other media outlets.

I recognize that I am not a member of the traditional news media or an accredited journalist. However, as you likely are aware, that business model is undergoing rapid change, and bloggers are increasingly playing a leading role in the discovery and dissemination of news. As such, I ask that you grant me a "representative of the news media" fee waiver.

I also believe that I should not be charged search or review fees for this request because I qualify as a researcher at an "educational institution" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(4).

---

[8] http://googleblog.blogspot.com/2008/09/another-step-to-protect-user-privacy.html
[9] http://www.washingtonpost.com/wp-dyn/content/article/2008/09/08/AR2008090802472.html and
http://bits.blogs.nytimes.com/2008/09/09/google-tightens-data-retention-policy-again/
[10] http://news.cnet.com/8301-13739_3-10038963-46.html
[11] http://www.theregister.co.uk/2008/09/12/google_ip_anonymization/
[12] http://blogs.zdnet.com/Google/?p=1139
[13] http://www.infoworld.com/d/windows/smoke-mirrors-and-googles-privacy-policies-532
[14] http://paranoia.dubfire.net/2007/02/tsa-has-outsourced-tsa-traveler.html
[15] http://www.wired.com/threatlevel/2007/02/homeland_securi/
[16] http://www.wired.com/threatlevel/2008/01/cronyism-led-to/ and
http://oversight.house.gov/documents/20080111092648.pdf

I am currently a Ph.D. Candidate at Indiana University. My Ph.D. research primarily relates to computer security and privacy, with a particular focus on the relationship between service providers and the government. See for example, my recent academic article, which has been published in a leading technology law journal.[17]

As an academic researcher, I am widely recognized by my peers and the media as an expert in privacy related issues. One news outlet recently described me as "among the most influential researchers today when it comes to online privacy and advertising." [18]

**Expedited Processing**

Please provide expedited processing of this request which concerns a matter of urgency. Both the House and Senate are currently considering overhauling the Electronic Communications Privacy Act, which is the primary statute that protects the privacy of Americans' communications from the government.

For example, in announcing the House Judiciary Committee's plan to hold hearings, Rep. Bobby Scott stated that:

> With the great advances in communications technology we have seen in recent years, and the unprecedented extension of government powers to peer into traditionally private communications, we need to examine whether the lines are appropriately drawn to reflect the level of constitutional protections and liberties citizens expect in their everyday communications.[19]

In addition to interest from Members of Congress, there has also been significant media interest in this issue. In the past two weeks, there have been more than one hundred news articles about the industry/public interest coalition's call for ECPA reform.[20]

The methods by which law enforcement agencies are able to obtain individuals' private information, including location data is thus currently a matter of significant public interest, and thus the public has an urgent need for accurate information about this issue.

As such, I ask that you expedite my request for this information.

I certify that my statements concerning the need for expedited processing are true and correct to the best of my knowledge and belief.

---

[17] Caught in the Cloud: Privacy, Encryption, and Government Back Doors in the Web 2.0 Era, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1421553

[18] http://www.mediapost.com/publications/?fa=Articles.showArticle&art_aid=111800

[19] http://judiciary.house.gov/news/100330.html

[20] See: http://www.mercurynews.com/breaking-news/ci_14791086
http://news.bbc.co.uk/2/hi/technology/8595775.stm and http://www.fastcompany.com/1602463/digital-due-process-coalition-including-microsoft-google-and-more-call-for-tougher-online-pr

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Christopher Soghoian



**U.S. Department of Justice**

Office of Information Policy/FOIA STAFF

2011 APR 25 PM 2: 23

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**APR 2 5 2011**

Mr. Christopher Soghoian
Center for Applied Cybersecurity Research
Indiana University
P.O. Box 2266
Washington, DC  20013

     Re:  Request No. 10-3692-R

Dear Mr. Soghoian:

     This is to advise you that your administrative appeal from the action of the Executive Office for United States Attorneys was received by this Office on April 12, 2011.

     The Office of Information Policy has the responsibility of adjudicating such appeals. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **AP-2011-01715**.  Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal you may contact me at the number above.

                  Sincerely,

                  Priscilla Jones
                  Supervisory Administrative Specialist

GOVERNMENT
EXHIBIT
D
EoUSA

EoUSA



**U.S. Department of Justice**

Office of Information Policy

_____

*Telephone: (202) 514-3642*                          *Washington, D.C. 20530*

## SEP 0 6 2011

Mr. Christopher Soghoian
Indiana University
Center for Applied Cybersecurity Research          Re:    Appeal No. AP-2011-01715
Post Office Box 2266                                        Request No. 10-3692-R
Washington, DC 20013                                       CAS:CDW

Dear Mr. Soghoian:

        You appealed from the action of the Executive Office for United States Attorneys on
records referred to it by the Criminal Division of the United States Department of Justice
pursuant to your request for records created between January 1, 2007 and April 13, 2010,
regarding certain surveillance practices.

        I have been informed that you filed a lawsuit pertaining to EOUSA's action in the United
States District Court for the District of Columbia.  Inasmuch as this matter is now before the
Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3)
(2010).

                                        Sincerely,

                                        Janice Galli McLeod
                                        Associate Director



GOVERNMENT
EXHIBIT
E
EOUSA

EOUSA