**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
CHRISTOPHER SOGHOIAN,                    )
                                                              )
                         Plaintiff,               )
                                                              )
            v.                                          )        Civil Action No. 11-1080 (ABJ)
                                                              )
UNITED STATES DEPARTMENT OF          )
JUSTICE,                                             )
                                                              )
                         Defendants.           )
_____)

**MEMORANDUM OPINION**

Plaintiff Christopher Soghoian, proceeding *pro se*, brings this action against defendant United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552 (2006). Plaintiff seeks an injunction compelling DOJ to release all documents pertaining to certain federal law enforcement electronic surveillance practices. The parties have cross-moved for summary judgment [Dkts. # 15, # 17], and the Court has conducted an *in camera* review of all of the withheld documents. As discussed below, DOJ has conducted an adequate search, properly asserted at least one exemption for all withheld documents, and released all reasonably segregable material. The Court will therefore grant DOJ's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

I.     **BACKGROUND**

       **A. Factual Background**

Plaintiff is a Washington, D.C.-based graduate fellow and Ph.D. candidate at Indiana University whose research focuses on "the relationship between law enforcement agencies and communications companies, such as Internet service providers and telephone carriers." Compl.

[Dkt. # 1] ¶ 3–4.  In the course of his research, plaintiff filed a FOIA request with DOJ on April 14, 2010, seeking records related to certain electronic surveillance practices of federal law enforcement.  *Id.* ¶ 5.  Specifically, plaintiff requested:

> a. "Any memos, communications, reports, legal opinions, or other documents related to the government's acquisition (either compelled, or voluntary disclosure by the carrier) of cellular location information (including but not limited to Call Detail Records) regarding individuals who are roaming, and thus not using their own carrier's network, and are instead using another wireless telecommunications carrier to which the individual is not a subscriber."  Pl.'s FOIA Request, Ex. 1 to Cunningham Decl. [Dkt. # 15-2] at 1.

> b. "Any memos, email communications, reports, legal opinions, or other documents related to government requests for location of called parties in "hybrid" orders – e.g., requests that a carrier provide the government with subscriber and toll records for each number called by the target including cell site or location information associated with each call for a particular period."  *Id.* at 1–2 (footnote omitted).

> c. "Any memos, email communications, reports, legal opinions, or other documents related to government agents requesting and obtaining non-content header information (such as "to" and "from" addresses) associated with individuals' email communications that have been opened, or are over 180 days old, based upon a showing of relevance to an ongoing investigation (and not via a 18 USC 2703(d) order).  [A]ny information regarding refusals by some Internet Service Providers to deliver such noncontent header information without a 2703(d) order, even for communications over 180 days old, and any information regarding DOJ's response to the refusal by the ISPs."  *Id.* at 2.

Plaintiff indicated that he was particularly looking for "any information held by the Office of Enforcement Operations ["OEO"], the Computer Crime [and] Intellectual Property Section ["CCIPS"]" and that "[t]he scope of this request is anything created between January 1, 2007 and April 13, 2010."  *Id*.

The DOJ Criminal Division ("CRM") acknowledged receipt of plaintiff's request on May 6, 2010, and initiated its search for responsive records in OEO and CCIPS on May 7, 2010.  Ex. 2 to Cunningham Decl.  The search yielded approximately 186 pages of responsive records from

CRM, one page from the United States Marshal Service ("USMS"), and approximately 418 pages from the Executive Office for United States Attorneys ("EOUSA"). Ex. 7 to Cunningham Decl. at 1–2. CRM subsequently referred the records from USMS and EOUSA to those respective agencies for review and processing. *Id.* at 2. CRM then learned that a 299-page manual entitled *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* existed, and after EOUSA determined it was publicly available on the Internet, CRM released the document in full to plaintiff, along with "a few pages that had been previously withheld." Cunningham Decl. ¶ 12–13.

After reviewing the remaining records, CRM determined that the other responsive records should be withheld pursuant to FOIA Exemptions found in 5 U.S.C. § 552(b)(2), (5), (6), (7)(C), and (7)(E). Ex. 7 to Cunningham Decl.[1] CRM notified plaintiff of its findings on March 28, 2011. *Id.* EOUSA conducted a similar search and determined, upon review of the records referred from CRM, that all pages should be withheld pursuant to FOIA Exemption (b)(3) for documents exempted from disclosure by statute. Boseker Decl. [Dkt. # 15-3] ¶ 12. EOUSA relied on the statutory authority of Federal Rule of Civil Procedure 6(e) (prohibiting the disclosure of records that pertain to a Federal Grand Jury); 18 U.S.C. § 2705(b) (2006) (where law enforcement has a warrant for access to stored communications, a court may order the electronic communications service provider not to notify any other person); 18 U.S.C. § 3123(b) (2006) (contents of an order for a pen register or tap and trace devices issued for ongoing criminal investigations); and 18 U.S.C. § 3103(a) (2006) (grounds for search warrant under Federal Rule of Criminal Procedure 41(b)). Boseker Decl. ¶ 13–15; Def.'s Statement of Material Facts Not in Dispute ("Def.'s SMF") [Dkt. # 15-1] ¶ 15. EOUSA also cited FOIA Exemptions

---

[1]       The Court notes that CRM no longer relies on section 552(b)(2). Cunningham Decl. ¶ 13 n. 4.

contained in 5 U.S.C. § 552(b)(2), (5), (7)(C), and (7)(E) as authority for withholding the documents.  Boseker Decl. ¶¶ 17–27.[2]

### B.  Procedural Background

Plaintiff filed a timely appeal of EOUSA's decision on April 12, 2011, Ex. C to Boseker Decl., and CRM's decision on April 16, 2011.  Def.'s SMF ¶ 12.  DOJ's Office of Information Policy ("OIP"), which is responsible for appeals of FOIA decisions, acknowledged receipt of plaintiff's EOUSA appeal on April 25, 2011, Ex. D. to Boseker Decl., and received his CRM appeal on April 16, 2011.  Ex. 8 to Cuningham Decl.  Plaintiff, however, filed his complaint in this Court on June 13, 2011, before OIP had issued a decision on either appeal.  Compl. at 1; Ex. 9 to Cunningham Decl.  Following the filing of plaintiff's complaint, OIP notified plaintiff that the appeals were closed on September 6, 2011.  Ex. 9 to Cunningham Decl.

On February 6, 2012, DOJ moved for summary judgment.  *See* Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") [Dkt. # 15].  In support of its motion, DOJ attached the affidavits of John E. Cunningham, III, an attorney in the FOIA/Privacy Act Unit of CRM, and John F. Boseker, an attorney advisor in EOUSA who handles FOIA matters.  Plaintiff cross-moved for summary judgment on April 10, 2012, arguing that DOJ improperly withheld documents under FOIA exemptions (5) and (7)(E) and that it has failed to segregate non-exempt material.  *See* Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem.") [Dkt. # 17] at 7.

## II.    STANDARD OF REVIEW

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins*

---

2       The Court notes that EOUSA no longer relies on section 552(b)(2).  Boseker Decl. ¶ 12.

*Tire & Rubber Co.*, 437 U.S. 214, 220, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential.").  The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail at the summary judgment phase in a typical FOIA action, an agency must satisfy two elements.  First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68.  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.*, quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).  Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005).  After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a

record" and provide it to the requesting party, "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

Once a FOIA request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents. *See* 28 C.F.R. § 16.9(c) (2012); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Failure to exhaust such remedies bars the lawsuit. *See Banks v. DOJ*, 813 F. Supp. 2d 132, 138–39 (D.D.C. 2011) (granting agency's motion for summary judgment in FOIA action where plaintiff failed to file an administrative appeal before filing the lawsuit); *Schwaner v. Dep't of Army*, 696 F. Supp. 2d 77, 81 (D.D.C. 2010) (same). A plaintiff is deemed to have exhausted his administrative remedies with respect to his FOIA request when an agency "fails to comply with the applicable time limit provisions" of FOIA. 5 U.S.C. § 552(a)(6)(C)(i). The agency has twenty days to make an initial determination, and following an administrative appeal of a FOIA decision, twenty days to make a determination on the appeal. 5 U.S.C. § 552(a)(6)(A)(i)–(ii).

The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Once the case comes to court, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, where a plaintiff has not provided evidence that an agency acted in bad faith,

"a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

While the same legal framework applies in every case, where a plaintiff proceeds *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## III.   ANALYSIS

### A. DOJ has complied with its obligations under FOIA.

Although DOJ relies on several exemptions as grounds for withholding the responsive documents, plaintiff challenges only the withholdings under Exemptions 5 and 7(E). Pl.'s Mem. at 7. Plaintiff also contends that even if the challenged or conceded exemptions apply, DOJ has failed to release all segregable material. *Id.* The Court must determine whether DOJ's search for responsive records was adequate, whether DOJ properly asserted FOIA exemptions for the withheld documents, and whether DOJ released all reasonably segregable material.

#### 1.   <u>DOJ's search for responsive records was adequate</u>.

An agency moving for summary judgment in a FOIA request must first demonstrate that it made a good faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Where agency affidavits assert that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife*, 314 F. Supp. 2d at 8. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir.

1999), quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."  *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) ("*Defenders of Wildlife II*").  However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch."  *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment in the agency' favor to be inappropriate based on the adequacy of the search.  *Weisberg v. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979).  A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents."  *Brown v. DOJ*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010), quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The government has additional responsibilities in cases involving *pro se* plaintiffs.  A defendant's motion for summary judgment must give notice to plaintiff in "a short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion."  *Neal v. Kelly*, 963 F.2d 453, 456–57 (D.C. Cir. 1992) (internal

citation omitted); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *see also* Fed. R. Civ. P. 56(e); LCvR 7(h).

Here, DOJ met its obligation to inform plaintiff of his responsibility to contradict the assertions in its motion. *See* Def.'s Mot. for Summ. J. at 1. Plaintiff's own motion for summary judgment does not challenge the adequacy of DOJ's search for documents; rather, it focuses on the argument that DOJ improperly asserted certain FOIA exemptions. *See* Pl.'s Mem. at 7–17; *see also* Def.'s Reply at 2. In light of the representations in DOJ's declarations as well as the fact that plaintiff was properly notified but did not challenge the adequacy of the search, the Court is satisfied that DOJ has established that it conducted an adequate search for responsive documents.[3]

 2. DOJ has properly asserted FOIA Exemption 5 for all withheld documents and properly asserted Exemption 7(E) for some withheld documents.

The next question for the Court to consider is whether the documents in question were properly withheld. *Leadership Conference on Rights*, 404 F. Supp. 2d at 252. Plaintiff contends that DOJ has improperly relied on FOIA Exemption 5, 5 U.S.C. § 552(b)(5), and Exemption 7(E),

---

3       Because the applicable standard of review is *de novo*, the Court notes that even if plaintiff had challenged the adequacy of the search, it would still find that DOJ's search was made in good faith, thorough, and reasonably calculated to locate responsive documents. After plaintiff's original request, CRM searched the records of OEO and CCIPS, which were the sections directly responsible for "resolv[ing] unique legal and investigative issues raised by emerging computer and telecommunications technologies and train[ing] federal, state, and local law enforcement personnel." Cunningham Decl. at ¶ 9. In addition to being the most competent sections of DOJ to address plaintiff's request, his original FOIA request specifically sought records from OEO and CCIPS. *See* Ex. 1 to Cunningham Decl. As a result of the search, CRM identified over 600 pages of responsive records in OEO and CCIPS, including approximately 186 pages from CRM itself, one page from USMS, and approximately 418 pages from EOUSA. Cunningham Decl. ¶ 10. CRM then referred the EOUSA records to that agency for processing. *Id.* ¶ 11.

*id* § 552(b)(7)(E), in withholding fourteen documents.  Pl.'s Mem. at 7.[4]  Specifically, plaintiff challenges DOJ's reliance on Exemptions 5 and 7(E) for withholding documents listed as Documents 1, 2, and 5–14 on CRM's *Vaughn* index [Dkt. # 22-2], and Documents 3 and 4 on EOUSA's *Vaughn* index [Dkt. # 22-1].  Pl.'s Mem. at 7 n.2.[5]

The agency bears the burden of justifying the decision to withhold records under FOIA's statutory exemptions.  5 U.S.C. § 552(a)(4)(B).  A court may, however, grant summary judgment based solely on information provided in an agency's affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Casey*, 656 F.2d at 738.  Such affidavits or declarations "are accorded a presumption of good faith[.]"  *SafeCard Servs., Inc.*, 926 F.2d at 1200.  Although an agency may be entitled to summary judgment based *solely* on information in its affidavits or declarations, a court may also conduct an *in camera* review of disputed records.  *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  Here, both the documents themselves and the Court's *in camera* review of them support the claimed exemptions.

---

4       Plaintiff does not challenge that reliance on FOIA Exemptions 3, 6, and 7(C) was appropriate for portions of CRM Documents 1–2, 5–14, as well as EOUSA Documents 3–4.  Pl.'s Reply to Def.'s Mot. for Summ. J. ("Pl.'s Reply") [Dkt. # 24] at 1 n.1.  The Court analyzes these documents to see whether they are protected from disclosure by the other asserted exemptions (Exemptions 5 and 7(E)), and based on the applicable exemption, whether they are segregable.  Plaintiff does not challenge CRM Documents 3–4 or EOUSA Documents 1–2 at all. *Id*.

5       DOJ released EOUSA Document 1 in full, Def.'s Reply at 2, because it is available in the public domain.  Def.'s Mem. ¶ 9.  Plaintiff does not challenge the withholding of CRM Documents 3 and 4 (drafts of an OEO manual) or EOUSA Document 2 (information regarding cases filed under seal).  Pl.'s Reply at 1 n.1.

*a. Documents were properly withheld under Exemption 5.*

Exemption 5 allows agencies to withhold records where the requested documents include "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).  In determining whether a document was properly withheld under Exemption 5, a court must ensure that the document satisfies two conditions: (1) "its source must be a Government agency, and [(2)] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  These privileges include the attorney work product and deliberative process privileges.  *Id.*  Because the documents originated from CRM and EOUSA, which are sections within the Department of Justice, plaintiff does not contest that the sources of the records were government agencies.  *See* Pl.'s Mem. at 7–8.  The Court therefore will examine only the second prong of the standard articulated in *Klamath*:  whether the withheld documents are protected by the claimed privilege.  532 U.S. at 8.  After conducting an *in camera* review of DOJ's withheld documents, the Court concludes that DOJ properly asserted Exemption 5.

*i. DOJ properly asserted the attorney work product privilege.*

Plaintiff contends that DOJ has improperly invoked the attorney work product doctrine because it did not identify the specific litigation for which the withheld documents were prepared. Pl.'s Mem. at 10.  Plaintiff does not challenge the documents individually but generally advances this argument with respect to all withheld documents.  *Id.* at 7–8.

Based on an *in camera* review of the documents and of DOJ's *Vaughn* index and declarations, the Court is satisfied that the documents were properly withheld under Exemption 5 on work product grounds because they were prepared by attorneys in anticipation of litigation.

The records at issue include internal presentations and discussions among DOJ attorneys that analyze the legal precedents and statutes applicable to the various methods of obtaining evidence from cell phones themselves and from phone carriers.  *See, e.g.,* Cunningham Decl. ¶ 17 (explaining that the purpose of the lectures was "to discuss with Assistant U.S. Attorneys issues that might arise if they selected certain investigative techniques and how that might impact their ability to establish their case.").  The D.C. Circuit has explained that the government is permitted to withhold such records under the attorney work product privilege, including documents "advis[ing] the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome." *Delaney, Migdail, & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987).  While plaintiff correctly notes that the documents in question do not relate to any specific claim or litigation, Pl.'s Mem. at 11, the D.C. Circuit has not construed the privilege so narrowly as to protect only work product related to specific cases currently in litigation.  *See Delaney,* 826 F. 2d at 127 (rejecting a "blanket rule" that work product privilege applies only to specific claims and litigation); *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (noting that work product protection "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated[]"); *Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 52 (D.D.C. 1996) (quoting *Schiller*).

Here, the legal strategies and issues addressed in the withheld documents are protected because they relate to foreseeable litigation arising out of the government's criminal investigations.  Cunningham Decl. ¶¶ 19–20.  CRM Documents 1 and 5–9 are presentations discussing legal strategies in investigations involving electronic surveillance.  *Id.* ¶ 20.  Some of these slides also contain the handwritten notes of the attorneys who made the presentations.  *Id.*

CRM Document 2, an internal manual produced by OEO, also contains legal guidance for attorneys conducting investigations. *Id.* ¶ 19. The document employs language stating that "OEO recommends" certain legal approaches and strategies over others, which falls squarely within the standard for attorney work product discussed in *Delaney*, 826 F.2d at 127. *See also Martin v. DOJ*, 488 F.3d 446, 455 (D.C. Cir. 2007) (holding that memos containing "extensive legal analyses of potential claims" are protected by the work product privilege). Although there is a handwritten notation on the document indicating that the document is a printed version of an online manual, the Cunningham Declaration states that the manual "is made available only to law enforcement personnel, and was written by OEO attorneys for use by those investigators." Cunningham Decl. ¶ 19.[6] The Court finds that these documents are covered by the attorney work product privilege because they present the legal strategies of the DOJ attorneys who will be required to litigate on behalf of the government. *See Delaney,* 826 F.2d at 127. Moreover, the documents that include handwritten notes are also protected by the privilege because they contain the "mental impressions, conclusions, opinions, or legal theories" of the attorneys. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947). These documents are therefore protected by the work product doctrine and exempt from disclosure under FOIA Exemption 5.

The availability of the privilege is even clearer where documents relate to specific litigation. CRM Documents 10 and 14 are emails among attorneys discussing particular search

---

6       Cunningham also noted that while this manual covers similar subject matter as a manual entitled *"Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations,"* which was available to the public, *id*. ¶ 12, CRM Document 2 "is different than that which is available to plaintiff" and that "[i]n creating the publicly available manual, CRM attorneys were careful to withhold details that would jeopardize law enforcement techniques while still making available to the public an explanation of the more general issues." *Id.* ¶ 19. This statement supports DOJ's reliance on Exemption 7(E), which the Court discusses in greater detail below.

warrants and investigations.  Cunningham Decl. ¶¶ 26, 28.  Similarly, EOUSA Documents 3 and 4 are emails among attorneys discussing legal theories and recommendations in specific sealed cases.  Boseker Decl. ¶¶ 17–19; EOUSA's Vaughn Index.  The emails contained in EOUSA Documents 3 and 4 are properly excluded under the work product doctrine because they include the attorney's mental impressions of sealed cases.  *See NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 154 (1975) ("Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980) (explaining that where a specific claim has arisen and is subject to litigation, the government may sustain the work product privilege).

The emails in EOUSA Documents 3 and 4 also include attachments that were properly withheld under Exemption 3, which allows exemption from disclosure by statutory enactment, because the cases were filed under seal pursuant to Federal Rule of Criminal Procedure 6(e).  *See* Boseker Decl. ¶¶ 13–14.  Therefore, CRM Documents 10 and 14 and EOUSA Documents 3 and 4 are protected in full from disclosure.

*ii.  DOJ properly asserted the deliberative process privilege.*

DOJ contends that all withheld documents are also protected from disclosure under Exemption 5 because of the deliberative process privilege.  Def.'s Mem. at 19, 22, 33.  The deliberative process privilege "enhance[s] 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, quoting *Sears,* 421 U.S. at 151.  An agency asserting this privilege must show that the document withheld is both "[p]re-decisional" and "deliberative." *Jordan v. DOJ*, 591 F.2d 753,

774 (D.C. Cir. 1978), *overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 591 F.2d 753 (D.C. Cir. 1981).  A document is pre-decisional if it is "[a]ntecedent to the adoption of an agency policy[,]" *id.*, and deliberative if it "makes recommendations or expresses opinions on legal or policy matters."  *Id.*, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).  Ultimately, "Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's [e]ffective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be."  *Id.*, quoting *Sears,* 421 U.S. at 153.

Plaintiff argues that DOJ has improperly asserted the deliberative process privilege under Exemption 5 by withholding records that are "final opinions or contain purely factual information."  Pl.'s Mem. at 8.  Based on both DOJ's declarations and *in camera* review, the Court rejects this contention.

CRM Documents 11, 12, and 13 are protected by the deliberative process privilege. Document 11 contains draft material for an OEO manual and analysis and commentary by DOJ attorneys.  The document is deliberative because attorneys are considering and debating language that will ultimately be embodied in a policy manual.  The same is true for Document 12, which contains draft language regarding guidance on obtaining search warrants.  Likewise, Document 13 contains draft material and commentary on guidance on obtaining location information from wireless carriers.  These documents are pre-decisional because they were drafts that had not yet been adopted as agency policy at the time they were written.  *See Jordan*, 591 F.2d at 774 (stating that the deliberative process privilege applies to "communications . . . that are actually antecedent to the adoption of an agency policy").  They are also deliberative, because they were "part of the agency give-and-take of the deliberative process by which the

decision itself is made." *Id*. at 774, quoting *Vaughn*, 523 F.2d at 1144.   Therefore, they are properly withheld under Exemption 5.

> ### b. *Some documents were properly withheld under Exemption 7(E).*

Plaintiff also challenges DOJ's reliance on Exemption 7(E) as grounds for withholding records from disclosure.   Pl.'s Mem. at 13.   Exemption 7(E) excludes from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

5 U.S.C. § 552(b)(7)(E); *see also Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (upholding FBI's withholding of information regarding procedures used in the forensic examination of computers on the ground that "disclosure potentially would aid others in circumventing future FBI investigations").   The agency justification "need not parrot the statutory language" in applying the correct standards to its FOIA exemption.   *Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (holding that it was a sufficient justification under Exemption 7(E) to state that documents could "provide insight into the security clearance process" and that the agency need not use the "risk circumvention" language in order to have applied the correct standard).

Plaintiff does not dispute that DOJ's documents regarding electronic surveillance are not "records compiled for law enforcement purposes" that would "disclose techniques and procedures for law enforcement investigations or prosecutions."   He does, however, argue that DOJ fails to describe how release of these documents "would lead to circumvention[.]"   Pl.'s Mem. at 13.   Plaintiff also alleges that Exemption 7(E) only exempts certain investigative techniques not known to the public and that defendant has failed to show that the records

describe techniques not generally known to the public.  *Id.*  DOJ argues that "[t]he information contained in [the withheld material] describes the various legal and investigative techniques that should be considered by investigators and Assistant United States Attorneys in conducting their criminal investigations.  Disclosure of this . . . information could provide criminals the information necessary to evade or thwart detection[.]"  Def.'s Mem. at 21.

After conducting an *in camera* review, the Court agrees that CRM Documents 1 and 5–9 meet the applicable standard.  Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection.  *See, e.g., Blackwell*, 680 F. Supp. 2d at 92.

CRM Documents 10 and 14 relate to advice and guidance given in connection with particular investigations.  CRM's *Vaughn* Index.  Similarly, EOUSA Documents 3 and 4 relate to advice and guidance given by DOJ attorneys in the course of active criminal investigations.  *See* EOUSA's *Vaughn* Index.  It is reasonable to conclude that where law enforcement seeks advice on electronic surveillance techniques, "[d]isclosure of even general guidance might reveal investigative techniques and considerations that could assist criminals in developing their own techniques for evading detection."  Cunningham Decl. ¶ 26.  This explanation is sufficient to shield the documents from disclosure under Exemption 7(E).  *See Morley*, 508 F.3d at 1129.  Therefore, Exemption 7(E) provides independent grounds for the withholding of records also found to be exempt under Exemption 5.

**B.  DOJ released all reasonably segregable portions of exempt documents.**

FOIA expressly requires agencies to extract "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "[I]t has  long been the rule in this Circuit that non-exempt portions of a

document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Agencies and courts must "differentiate among the contents of a document rather than treat it as an indivisible 'record' for FOIA purposes." *Abramson*, 456 U.S. at 626. Regardless of whether a party actually challenges an agency's determination on the segregability of requested records, a district court must not "simply approv[e] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996), citing *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (internal quotation marks omitted); *see Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("If the district court approves withholding without such a finding [of segregability], remand is required even if the requester did not raise the issue of segregability before the court."). The district court's findings of segregability must be "specific." *Sussman*, 494 F.3d at 1116.

The government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents. *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993). The agency must "provide[] a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable material has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010); *see also Armstrong*, 97 F.3d at 578 (affirming summary judgment where government affidavits explained non-segregability of documents with "reasonable specificity"). The government may meet its obligation of "reasonable specificity" with "[t]he combination of the *Vaughn* index and [agency] affidavits." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *see also Loving v.*

*Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008).  Whether the *Vaughn* index is sufficient "turns on whether the agency has sufficiently explained why there was no reasonable means of segregating factual material from the claimed privilege material."  *Wilderness Soc'y*, 344 F. Supp. 2d at 18.  "[A] blanket declaration that all facts are so intertwined" is not sufficient to meet this burden.  *Id.* at 19.

Here, DOJ has met its burden of releasing all reasonably segregable material for all withheld documents.  First, the Court does not need to consider whether documents that are appropriately withheld as attorney work product are properly severable.  *See, e.g., Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371–72 (D.C. Cir. 2005) (finding that segregability is not required with respect to attorney work product because "factual elements can seldom be segregated from attorney work product") (internal quotation marks and citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) ("Any part of a [document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.").

Plaintiff argues that "it is a near-certainty that [d]efendant has withheld some purely factual material."  Pl.'s Mem. at 10.  While documents withheld under the work product privilege need not be analyzed for segregability, there is no such blanket exemption for the deliberative process privilege.  *See Judicial Watch*, 432 F.3d at 371–72.  But plaintiff's assertion that DOJ has withheld purely factual information does not compel the release of all "purely factual" information within the document.  While, typically, factual information that is "severable from its context" must be disclosed, *EPA v. Mink*, 410 U.S. 73, 88–89 (1973), this Court has held that certain factual information may be withheld if "disclosure would . . . expose [the] decisionmaking process in such a way as to discourage candid discussion within the agency

and thereby undermine the agency's ability to perform its functions." *McKinley v. Bd. of Governors*, Civ. Action. No. 1:10–cv–00751, 2012 WL 1034464, at *11, citing *McKinley v. FDIC*, 744 F. Supp. 2d 128, 140 (D.D.C. 2010).

In this case, CRM Documents 11, 12, and 13 were withheld under the deliberative process privilege and therefore must be analyzed for segregability. These documents are informal memos shared between attorneys discussing the OEO manual, as well as other legal guidance for obtaining warrants and other information. After reviewing them *in camera*, the Court is satisfied that their disclosure would improperly expose the decisionmaking process and that there are no segregable portions of the documents. CRM Documents 11, 12, and 13 was therefore properly withheld in full.

EOUSA's assertions that Documents 3 and 4 are not segregable are also sufficient. *See* Def.'s Mem. at 34–36. These documents, according to EOUSA's *Vaughn* index and the Boseker Declaration, are related to either specific applications or orders for pen registers that are exempt from disclosure by statute or under seal by a court or are otherwise privileged in full under the work product doctrine. *See* EOUSA Vaughn Index, Boseker Decl. ¶ 28. Therefore, the Court is satisfied that DOJ has satisfied the FOIA requirement that all reasonably segregable materials be released after appropriately asserting an exemption.

IV. **CONCLUSION**

In sum, the Court makes the following rulings with respect to the withheld documents:

- CRM Document 1: This document was properly withheld under Exemption 5 because it constitutes attorney work product.

- CRM Document 2: This document was properly withheld under Exemption 5 because it constitutes attorney work product.

- CRM Document 3: This document was not in controversy.

- CRM Document 4:  This document was not in controversy.

- CRM Document 5:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- CRM Document 6:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- CRM Document 7:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  This document was also properly withheld under Exemption 7(E) because it was compiled for law enforcement purposes and disclosure would pose a risk of circumvention of the law.

- CRM Document 8:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- CRM Document 9:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- CRM Document 10:  This document was properly withheld under Exemption 5, because it constitutes attorney work product, and Exemption 7(E) because it was compiled for law enforcement purposes and disclosure would carry a risk of circumvention of the law. Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- CRM Document 11:  This document was properly withheld under Exemption 5 because it is protected by the deliberative process privilege.

- CRM Document 12:  This document was properly withheld under Exemption 5 because it is protected by the deliberative process privilege.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and were therefore conceded by plaintiff.

- CRM Document 13:  This document was properly withheld under Exemption 5 because it is protected by the deliberative process privilege.

- CRM Document 14:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertions of Exemptions 6 and 7(C) also were not challenged and therefore were conceded by plaintiff.

- EOUSA Document 1:  This document was released in full to plaintiff and was therefore not in controversy.

- EOUSA Document 2:  This document was not in controversy.

- EOUSA Document 3:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertion of Exemption 3 also was not challenged and therefore was conceded by plaintiff.

- EOUSA Document 4:  This document was properly withheld under Exemption 5 because it constitutes attorney work product.  Defendant's assertion of Exemption 7(C) also was not challenged and therefore was conceded by plaintiff.

For all of the reasons set forth above, the Court will grant defendant's motion for summary judgment [Dkt. # 15] and deny plaintiff's cross-motion for summary judgment [Dkt. # 17].  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  July 31, 2012